**In the Matter of Paul G. EVANS, Appellant.**

**Nos. 12852, 79–197.**

District of Columbia Court of Appeals.

Argued Sept. 11, 1979.

Decided Feb. 8, 1980.

Rehearing En Banc Denied March 10, 1980.

Paul G. Evans, pro se.

Mark J. Biros, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time brief was filed, and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on brief, for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from two criminal contempt convictions in which appellant Paul G. Evans, a District of Columbia lawyer, was fined, in the first proceeding, $500 for contempt arising from failure to appear in three court-appointed cases, and, in the second conviction, $400 for failure to pay the $500 fine. On appeal, Evans seeks reversal of both convictions on the ground that they were obtained in violation of his right to a jury trial under D.C.Code 1973, § 16–705(b). He also contends that the second conviction should be reversed on the additional grounds that the trial was tainted by the bias of the presiding judge, and that he could not, in any case, be found guilty of contempt for failure to pay a fine when he had filed an application for a stay of that fine, which application had not been ruled on by the trial court and when, he contends, payment of the fine would have mooted his appeal.[1]

We conclude that, read in the light of its legislative history, D.C.Code 1973, § 16–705(b), does not afford appellant a statutory right to a jury trial for criminal contempt when the penalty received is only a fine. We conclude further, however, that under the Sixth Amendment to the Constitution and decisions of the United States Supreme Court which have applied it, appellant should have been afforded a jury in both of his trials. We further find that appellant's second conviction was impermissibly tainted by the bias of the trial judge. Accordingly, we reverse the second conviction and adjust the fine imposed in the first conviction to conform to our decision.

*Procedural History*

On September 28, 1977, appellant Evans appeared before Judge Bacon in the trial court in response to a September 21 order directing him to show cause why he should

---

1. Appellant also argues that his convictions violated the double jeopardy and due process protections of the Constitution. We have examined these contentions and find them to be without merit. Because of our reversal of his second conviction on the ground of bias, we find it unnecessary to consider appellant's mootness argument.

not be held in contempt for failing to appear for trial on three separate dates in three different cases. After informing the court that he was aware of the subject matter of the order, appellant stated that he was ready to go forward with the hearing, admitted his failure to appear in three cases, and attempted to explain why he had been absent.

From appellant's admissions and explanations, the court found that he consciously and deliberately chose not to appear in both the first and second cases without notifying the court of his decision. In the third case, because he failed to pick up the mail at his local office, the court found that appellant put himself in a position where he could not receive notices of his commitments to the court. All of these acts and omissions, the court found, were "conscious decisions" evidencing a "reckless disregard of [his] professional duty and a willful failure to comply with [Rules 101(b)(3) and 112] of the Court." [2] Appellant was thereupon adjudged in contempt and ordered to pay a $500 fine. At his request, appellant was permitted to defer payment of the fine until December 1, 1977. On October 6, 1977, appellant noted an appeal from this conviction (No. 12852).

On November 21, 1977, appellant presented a paper denominated "Application for Stay" to the special proceedings clerk, who file stamped it. Appellant then hand carried the file stamped copy to the appeals coordinator's office, where it was placed with the record on appeal.[3] No further action was taken by either appellant or the court in regard to staying the payment of the $500 fine until August 31, 1978, when Judge Bacon issued an order which *inter alia* noted that, although an "application for stay" was in the record on appeal, no such application was "reflected in the official trial court jacket," nor had it otherwise been submitted to the trial court. Additionally, the judge observed that neither she nor this court had stayed her order directing appellant to pay the fine by December 1, 1977. The court therefore directed appellant to appear on September 22, 1978, and show cause why he should not be held in contempt for failure to pay the $500 fine which she had previously imposed.

On September 22, 1978, appellant filed an affidavit of bias in the trial court seeking the recusal of Judge Bacon at the hearing on her order to show cause for his failure to pay the $500 fine. Judge Bacon recused herself on September 26, and the case was thereafter assigned to Judge Braman. Prior to the second show cause hearing, appellant filed two affidavits of bias seeking Judge Braman's disqualification to preside at the hearing. In these affidavits he outlined three alleged incidents which, he asserted, reflected bias. The first incident occurred when appellant, interceding on behalf of an attorney accused of soliciting clients, was assertedly told by Judge Braman to disassociate himself from that attorney. According to the affidavit, the second

2. Super.Ct.Cr.R. 101(b)(3) provides:
   Defense attorneys shall be in the Assignment Section when their cases are called. No case may be certified unless the attorney and his client are present, except where the attorney has previously announced ready and has been certified for trial in another case. If an attorney is unable to be present in the Assignment Section because of his active engagement in trial or because of a required appearance in the United States District Court or an Appellate Court, he shall leave a slip with the courtroom clerk indicating where he will be, when he expects to return, and whether he is ready for trial.
   Super.Ct.Cr.R. 112 provides:
   A completed *praecipe* shall be entered by defense counsel, whether appointed or retained, in every criminal case within one court day of his being appointed or retained. Such *praecipe* shall state the attorney's name, address, telephone number, and attorney registration number. No attorney may withdraw his appearance except by leave of court after notice served his client.

3. Appellant has contended throughout these proceedings, and the government has disputed, that these actions constituted a "filing" of the stay in the Superior Court sufficient to bring the stay to the attention of Judge Bacon for action. Appellant's conduct in this regard casts grave doubt on the merit, if not validity, of his contention. Because we reverse on another ground his contempt conviction for failure to pay the fine, however, we need not reach this question.

one occurred in traffic court and resulted in appellant's being accused by Judge Braman of soliciting money from a Spanish-speaking woman. The third allegation made by appellant was that Judge Braman had purportedly made disparaging remarks about him to third persons. On October 27, 1978, Judge Braman denied appellant's request for disqualification, finding that each of appellant's allegations was legally insufficient to warrant recusal.

On January 18, 1979, Judge Braman issued an order which, *inter alia*, denied appellant's oral request for a jury trial. Consequently, on January 31, 1979, appellant appeared before Judge Braman to answer the show cause order issued by Judge Bacon concerning his failure to pay the previously imposed fine by December 1, 1977. Appellant testified that he did not pay the fine because he had "filed" on November 21, 1977, an application for a stay of the order directing him to pay the fine. He admitted that no such application nor any reference to it was in the Superior Court case jacket, and that he had not considered how the motion would come to Judge Bacon's attention, when the original had been put in the record on appeal.

At the conclusion of the hearing appellant was adjudged in contempt. The court concluded that appellant, in not paying the fine by December 1, 1977, or at any time thereafter, and knowing that no stay of the order had actually been granted, "intention[ally] and deliberate[ly]" assumed the risk inherent in disobedience to the order. Although considering appellant's handling of the application for a stay as an extenuating circumstance, Judge Braman nevertheless found that the motion was "in no proper sense made part of the record" in the trial court and that appellant, as an attorney, "should certainly have known that [it] would not come to the attention of Judge Bacon." Furthermore, the trial judge noted, the mere filing of such an application, as appellant himself admitted, did not effect a stay of the order. The court thereupon levied a fine of $400 but stayed execution of the sentence until this court had decided appellant's appeal from his first contempt

conviction. On February 5 appellant noted an appeal (No. 79–197) from this second contempt conviction, and on March 23 this court, upon appellant's motion, consolidated both appeals.

### I.

Appellant first contends that his denial of a jury trial in criminal proceedings which resulted in penalties in excess of $300 violated D.C.Code 1973, § 16–705(b) which provides in pertinent part:

> In any case where the defendant is not under the Constitution of the United States entitled to a trial by jury, the trial shall be by a single judge without a jury, except that if—
>
> (1) the case involves an offense which is punishable by a fine or penalty of more than $300 or by imprisonment for more than ninety days (or for more than six months in the case of the offense of contempt of court), and
>
> (2) the defendant demands a trial by jury and does not subsequently waive a trial by jury in accordance with subsection (a), the trial shall be by jury.

Appellant argues that the plain meaning of the statute permits no other reading than that it requires a jury trial in contempt proceedings whenever the penalty exceeds either $300 or six months' imprisonment. The government argues, on the other hand, that the statute must be read in light of its legislative history and that it provides for a jury trial in contempt cases only when the punishment exceeds six months' imprisonment.

Prior to 1970, D.C.Code 1973, § 16–705(b) contained no specific reference to contempt convictions, providing that

> In any case where the accused would not by force of the Constitution of the United States be entitled to a trial by jury, the trial shall be by the court without a jury, unless it is a case wherein the fine or penalty may be more than $300, or imprisonment as punishment for the offense may be more than ninety days and the accused demands a trial by jury. In

the latter case the trial shall be by jury. [D.C.Code 1967, § 16–705(b).]

At that time, the maximum penalty which could be meted out by the Court of General Sessions for criminal contempt was a $50 fine or 30 days' imprisonment (D.C.Code 1967, § 11–982(a)). Consequently, criminal contempt convictions could never fall under the jury trial provision of § 16–705(b). In 1970, however, Congress enacted the District of Columbia Court Reform and Criminal Procedure Act of 1970. Pub.L. No. 91–358, 84 Stat. 473 (July 29, 1970). This Act worked extensive changes in Title 11 of the District of Columbia Code, among which was the elimination of any limit on the nature or amount of the potential penalty which could be imposed by the Superior Court for criminal contempt. *See* D.C.Code 1973, § 11–944. As part of the conforming amendments to that Act, Congress added the parenthetical phrase to § 16–705(b) of the D.C.Code which specifically affords the right to a jury trial in contempt cases where the penalty exceeds six months' imprisonment.

■ The government argues that Congress, aware that under the old statutory scheme criminal contemnors were never afforded a jury trial because the penalty imposed could never reach the § 16–705(b) threshold, and aware also that under the Court Reform Act this threshold could be crossed because there was no longer a statutory maximum penalty for contempt, sought to clarify the application of § 16–705(b) to contempt cases by adding the parenthetical provision. We find the government's assertion that Congress intended this to be the only condition under which alleged contemnors were statutorily entitled to a jury trial to be supported by the

legislative history of the amendment.[4] The House Report explained the amendment:

Section 145(d)(4) amends D.C.Code section 16–705 to reflect the criminal jurisdiction of the new Superior Court and adds a provision for jury trial in contempt cases when the penalty exceeds 6 months. This is necessary since the former penalty limit on contempt in the local courts has been eliminated in the new title 11. [H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 165 (1970).]

Similarly, the Senate Report stated:

The right to jury trial as now stated in the District of Columbia Code would be preserved. However, since the penalty limit on contempt punishment by the District of Columbia courts is eliminated in proposed title 11, a specific guarantee of jury trial for contempt punishable by more than 6 months' imprisonment has been included. [S.Rep. No. 91–405, 91st Cong., 1st Sess. 35–36 (1969).]

Accordingly, we hold that in amending § 16–705(b) Congress intended to afford a jury trial in contempt cases only when the penalty imposed exceeds six months' imprisonment, and that therefore criminal contemnors have no right to a jury trial under D.C.Code 1973, § 16–705(b) when the only penalty imposed is a fine.

This conclusion that appellant Evans has no statutory right to a jury trial is not the end of our inquiry, however. At the trial level appellant asserted in his Memorandum to Judge Braman in support of his motion for a jury trial that the Sixth Amendment guaranteed his right to a jury. Although he did not rely heavily on the constitutional question on appeal, we find that it is dispositive of his claim for relief.

---

4. In making this argument, the government asserts that Congress was mindful both of the "historic" rule that there was no right to a jury trial in contempt proceedings, *see Muniz v. Hoffman*, 422 U.S. 454, 470, 95 S.Ct. 2178, 2187, 45 L.Ed.2d 319 (1975), and of the previous statutory scheme in the District of Columbia under which contemnors were not afforded jury trials. The government therefore seems to assume that Congress, by adding the parenthetical provision to § 16–705(b), created a jury trial right under the statute which otherwise would not have existed even despite the elimination of the penalty limits for contempt in the new § 11–944. Clearly, however, the effect of the elimination of the maximum penalties for contempt under the new act was to place all criminal contemnors potentially within the ambit of § 16–705(b). We think it a more logical conclusion, therefore, that Congress recognized this effect and sought expressly to limit it by amending § 16–705(b) to provide for jury trials only in contempt cases resulting in imprisonment for more than six months.

The Supreme Court had held historically that state and federal courts have the constitutional power to punish any criminal contempt without a jury trial. *See, e. g., Green v. United States,* 356 U.S. 165, 183, 78 S.Ct. 632, 642, 2 L.Ed.2d 672 (1958). With its relatively recent decisions in *United States v. Barnett,* 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964) and *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), however, the Court began a reexamination of this doctrine. In *Barnett* the Court held again that there was no constitutional right to a jury trial in *all* criminal contempt cases, but indicated a willingness to consider exceptions to this rule in *some* cases. 376 U.S. at 695 n. 12, 84 S.Ct. at 991. In *Cheff* the Court began to give some guidance as to the scope of these exceptions. Noting that it had never required a jury trial for petty offenses, the Court said:

> According to 18 U.S.C. § 1 (1964 ed.), "[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months" is a "petty offense."
>
> Since Cheff received a sentence of six months' imprisonment, and since the nature of criminal contempt, an offense *sui generis,* does not, of itself, warrant treatment otherwise, Cheff's offense can be treated only as "petty" in the eyes of the statute and our prior decisions. We conclude therefore that Cheff was properly convicted without a jury. [*Cheff v. Schnackenberg, supra* 384 U.S. at 379–80, 86 S.Ct. at 1526; citations omitted.]

In *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) and *Dyke v. Taylor Implement Mfg. Co.,* 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the Court elaborated on its holding in *Cheff,* developing in these and subsequent decisions a constitutional doctrine which the Court "capsulized" in *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975):

> (1) Like other minor crimes, "petty" contempts may be tried without a jury, but contemnors in serious contempt cases in the federal system have a Sixth Amendment right to a jury trial; (2) criminal contempt, in and of itself and without regard to the punishment imposed, is not a serious offense absent legislative declaration to the contrary; (3) lacking legislative authorization of more serious punishment, a sentence of as much as six months in prison, plus normal periods of probation, may be imposed without a jury trial; (4) but imprisonment for longer than six months is constitutionally impermissible unless the contemnor has been given the opportunity for a jury trial. [*Id.* at 475–76, 95 S.Ct. at 2190.]

Under this doctrine "[a]lleged criminal contemnors must be given a jury trial, therefore, unless the legislature has authorized a maximum penalty within the 'petty offense' limit or, if the legislature has made no judgment about the maximum penalty that can be imposed, unless the penalty actually imposed is within that limit." *Dyke v. Taylor Implement Mfg. Co., supra,* 391 U.S. at 219–20, 88 S.Ct. at 1474.[5]

In *Cheff, Bloom* and the cases which followed them,[6] the Court dealt only with length of imprisonment as a measure of the seriousness of the offense. In *Muniz,* the Court found that a $10,000 fine imposed on a union local was not a deprivation of such magnitude as to warrant a jury trial, but expressly refused to decide whether there is a constitutional right to a jury trial in con-

---

**5.** This formulation places the trial judge in the difficult position of having to look ahead to the sentence he or she might impose, before hearing the evidence, when ruling on a motion for a jury trial for an offense for which there is no statutory maximum penalty. *See Cheff v. Schnackenberg, supra,* 384 U.S. at 382, 86 S.Ct. at 1537 (Harlan, J., concurring and dissenting). The majority in *Cheff* provided a partial solution to this problem by inviting reviewing courts, where appropriate, to revise sentences in contempt cases. *Id.* at 380, 86 S.Ct. at 1526.

**6.** *See, e. g., Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Dyke v. Taylor Implement Mfg. Co., supra.*

tempt cases in which only a fine is imposed. 422 U.S. at 477, 95 S.Ct. at 2190. Although the Supreme Court has still not ruled on this question, other federal courts have grappled with it. In *Douglass v. First National Realty Corp.*, 177 U.S.App.D.C. 409, 543 F.2d 894 (1976), the District of Columbia Circuit held that a $5,000 fine could not be assessed in a nonjury contempt proceeding against a contemnor who is an individual. *Id.* at 417, 543 F.2d at 902. The court in *Douglass* noted the Supreme Court's past references to the federal definitional statute, 18 U.S.C. § 1(3),[7] in drawing the line between petty and serious offenses. Although conceding that the Supreme Court in *Muniz* had accorded the statute "no talismanic significance," 422 U.S. at 477, 95 S.Ct. at 2190, the *Douglass* court adopted it as the only federal benchmark of seriousness in monetary criminal penalties. Similarly, in *United States v. Hamdan*, 552 F.2d 276 (9th Cir. 1977), the court found that *Muniz* did not preclude a holding that a fine could be of sufficient magnitude as to require a jury trial. The *Hamdan* court also adopted the 18 U.S.C. § 1(3) standard in "the interests of uniformity, objectivity, and practical judicial administration," *id.* at 280, noting that a case by case determination of the seriousness of the offense as

measured by the level of the fine would be unworkable. *Id.* at 279.

The *Hamdan* and *Douglass* courts adopted the federal definitional statute as the appropriate standard for federal practice. In discussing the resolution of the question of whether a particular offense is or is not petty, the Supreme Court in *District of Columbia v. Clawans*, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937), stated that

> [d]oubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the *laws and practices of the community* taken as a gauge of its social and ethical judgments. [*Id.* at 628, 57 S.Ct. at 663; emphasis supplied.]

We conclude therefore that the appropriate standard for determining the seriousness of contempts committed in the District of Columbia local courts is to be found in the D.C.Code provisions concerning trial by jury, § 16–705(b). We hold that because appellant was fined in excess of $300, the standard contained in that section, in both convictions, he was convicted of serious offenses and entitled to a jury trial in both instances,[8] as guaranteed by the Sixth Amendment and by D.C.Code 1973, § 16–705(a).[9]

---

7. This statute provides that in the federal regime, an offense may be considered petty if it is a misdemeanor for which the penalty does not exceed $500 or six months' imprisonment.

8. We note in passing that this was the approach taken by the D.C. Circuit in *Rollerson v. United States*, 119 U.S.App.D.C. 400, 343 F.2d 269 (1964):

> Since Rollerson's contempt conviction, a majority of the Supreme Court has indicated in *United States v. Barnett*, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), that the punishment which may be imposed after a non-jury contempt conviction is limited to that provided for petty offenses. The Supreme Court did not specify further, but we think we may take our guide from the D.C.Code provision governing trial by jury. [*Id.* at 408, 343 F.2d at 277.]

The court remarked further:

> We do not think the definition of petty offense contained in 18 U.S.C. § 1—one carrying a penalty of up to $500 fine and/or

six months imprisonment—applies here. [*Id.* at n. 16.]

That this statute is the appropriate definitional standard is also implicit in this court's comments in *Jackson v. United States*, D.C.App., 262 A.2d 106, 109 n. 8 (1970):

> We are mindful that under D.C.Code 1967, § 16–705(b) the accused is allowed to *demand* a jury trial in certain cases wherein a jury trial is not constitutionally required. . . . However, we deem it prudent to point out that the line between a "serious offense" requiring a jury trial and a "petty offense" which does not is not always clear. *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). It is therefore advisable to obtain conf[i]rmation of the defendant's desire to be tried without jury in open court in all cases "wherein the fine or penalty may be more than $300, or imprisonment as punishment for the offense may be more than ninety days." [Emphasis in original.]

9. D.C.Code 1973, § 16–705(a) provides:

It remains for us to consider the appropriate remedy for this violation of appellant's Sixth Amendment rights. Appellant urges us to reverse his convictions and remand for a jury trial. We note however the Supreme Court's suggestion in *Cheff v. Schnackenberg* that reviewing courts may revise sentences in contempt cases tried without juries. *Cheff, supra*, 384 U.S. at 380, 86 S.Ct. at 1526. This suggestion has been followed by the District of Columbia Circuit in *Douglass v. First National Realty, supra*, and in *Schnurman v. United States*, 126 U.S.App.D.C. 315, 379 F.2d 92 (1967), and we find it to be appropriate here. Accordingly, we order that appellant's fine in his first conviction be reduced to $300.

## II.

We make no similar order regarding appellant's fine in his second conviction [10] because we find that the appearance of bias on the part of the trial judge necessitates reversal. Prior to his hearing before Judge Braman appellant filed two affidavits of bias pursuant to Super.Ct.Civ.R. 63–I. The first affidavit, asserting three grounds of bias, was stricken because it was not served on opposing counsel. Appellant thereupon filed a second affidavit of bias asserting three new grounds. The court nevertheless considered all six claims and ruled them legally insufficient.

Rule 63–I provides:

(a) Whenever a party to any proceeding makes and files a sufficient affidavit that the judge before whom the matter is to be heard has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

(b) The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be accompanied by a certificate of counsel of record stating that it is made in good faith. The affidavit must be filed at least 24 hours prior to the time set for hearing of such matter unless good cause is shown for the failure to file by such time.

The rule is by its terms mandatory. *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 127 U.S.App.D.C. 23, 29, 380 F.2d 570, 576, *cert. denied*, 389 U.S. 327, 88 S.Ct. 437, 19

In a criminal case tried in the Superior Court in which, according to the Constitution of the United States, the defendant is entitled to a jury trial, the trial shall be by jury, unless the defendant in open court expressly waives trial by jury and requests trial by the court, and the court and the prosecuting officer consent thereto. In the case of a trial without a jury, the trial shall be by a single judge, whose verdict shall have the same force and effect as that of a jury.

Because the statute requires express waiver in open court of the constitutional right to a jury trial, it is irrelevant that appellant did not demand a jury in his first trial. *See also Dobkin v. District of Columbia*, D.C.App., 194 A.2d 657 (1963) (defendant must have knowledge of penalties he may receive in order to demand jury trial).

10. As a general rule, "[v]iolations of an order are punishable as criminal contempt even though the order is set aside on appeal." *United States v. United Mine Workers*, 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947), *citing Worden v. Searls*, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887). This is so even when the order itself may be unconstitutional. *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct.

1824, 18 L.Ed.2d 1210 (1967). When, however, the order is without the jurisdiction or power of the issuing court, a refusal to obey it is not punishable by contempt. *Ex parte Fisk*, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117 (1885); *In re Banks*, D.C.App., 306 A.2d 270 (1973); *United States v. Thompson*, 319 F.2d 665 (2d Cir. 1963); *Heasley v. United States*, 312 F.2d 641 (8th Cir. 1963); *See* Annot. 12 A.L.R.2d 1059 (1950).

In this case, however, the question of the trial court's power to fine in excess of $300 without a jury was a novel and complicated one. Therefore, appellant's decision to disregard its order without benefit of a stay was taken at his peril. We conclude that the trial court's imposition of a fine in excess of what we have now determined to be the lawful maximum was not so clearly outside its powers as to justify appellant's refusal to comply with the court's order. *See United States v. United Mine Workers, supra*, 330 U.S. at 309–10, 67 S.Ct. at 703–704 (concurring opinion by Justice Frankfurter). *Cf. Stump v. Sparkman*, 435 U.S. 349, 356–57 & n.7, 98 S.Ct. 1099, 1104–1105 & n.7, 55 L.Ed.2d 331 (1978).

L.Ed.2d 560 (1967).[11] If an affidavit meets the rule's standards, the judge has a duty to recuse himself. *Morse v. Lewis*, 54 F.2d 1027, 1031 (4th Cir.), *cert. denied*, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291 (1932). Therefore, because the disqualification of a trial judge may disrupt and delay the judicial process, affidavits of bias are strictly scrutinized for form, timeliness and sufficiency.[12] *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir. 1972), *cert. denied*, 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973).

■ This court in *In re Bell*, D.C.App., 373 A.2d 232, 234 (1977), recently set forth with approval a three part test for determining the legal sufficiency of an affidavit of bias:

"1. The facts must be material and stated with particularity;

"2. The facts must be such that, if true they would convince a reasonable man that a bias exists.

"3. The facts must show the bias is personal as opposed to judicial, in nature." [Citations omitted.]

Simply stated, a reviewing court must decide whether the affidavit asserts facts from which a fair and reasonable mind might infer personal prejudice. In his first affidavit of bias, appellant set forth an incident in which Judge Braman accused appellant of seeking money from a Spanish-speaking defendant in traffic court. Appellant alleged in the affidavit that Judge Braman told appellant from the bench that he would no longer appoint him to any traffic case and later advised him by letter that he had ordered tapes of the proceedings with a view to considering appropriate sanctions, and would not appoint him in any future cases.

In his order declining recusal, Judge Braman dismissed this incident, finding that it concerned in-court events and was therefore insufficient to support an allegation of personal, as opposed to judicial, bias. He attached to his order, however, not only copies of the correspondence described by appellant in his affidavit, but also copies of a letter which Judge Braman had sent to the Bar Counsel for the Board on Professional Responsibility of this court, requesting review of the incident, the Bar Counsel's reply that there was not a sufficient basis for action by the Board, and a letter from Judge Braman to appellant advising him of the Bar Counsel's decision but remarking: "I would be remiss, however, if I did not state to you that I found your conduct distinctly objectionable." In his letter to the Bar Counsel, Judge Braman stated:

The matter has caused me substantial concern. As you know, "capping" is, unfortunately, a persistent problem in our court. (Indeed, some think it is growing in proportions.) Of course, not being fluent in Spanish, I did not know whether this was actually taking place. However, it was apparent to me that Mr. Evans was not in fact acting as a translator.

He also enclosed a transcript reconstructed by the Corporation Counsel's office, a Spanish-speaking court employee and the woman involved, based on her recollection of the incident and the "rather imperfect" tape recording of the proceedings in traffic court. The letter to the Bar Counsel contained the further information that Judge Braman had made an earlier request to the Corporation Counsel's office to "review the [traffic court incident] from the standpoint of criminal contempt." After an investigation, the Corporation Counsel's office also declined to proceed because of insufficient evidence.

■ The sufficiency of an affidavit of bias is ordinarily judged and reviewed not by "the actual state of mind of the judge or litigant, but only [by] what the latter is willing to incorporate in an affidavit and counsel to indorse." *United States v. Hanrahan*, 248 F.Supp. 471, 475 (D.D.C.1965),

---

11. Rule 63–I follows the language of 28 U.S.C. § 144. We therefore look to cases decided under that statute in construing the rule. *See In re Bell*, D.C.App., 373 A.2d 232, 233 (1977).

12. The form and timeliness of appellant's affidavit are not in dispute here. We therefore limit our discussion to the sufficiency of the affidavit.

quoting *Johnson v. United States*, 35 F.2d 355, 357 (D.C.W.D.Wash.1929). This case presents us with unusual circumstances, however. When a trial judge by his own action has injected additional facts into the record, a reviewing court should put aside its customary reluctance to go beyond the face of the affidavit in determining whether the trial judge acted properly in declining to recuse himself. *See In re Union Leader Corp.*, 292 F.2d 381, 388 (1st Cir.), *cert. denied*, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961).

The facts as stated by appellant in his affidavit, together with the facts adduced by the trial judge in his order, support an inference of bias sufficient to have required recusal. Ordinarily, a trial judge is not required to recuse when an affiant alleges bias arising from a source within the "four corners of the courtroom." *Tynan v. United States*, 126 U.S.App.D.C. 206, 210, 376 F.2d 761, 765, *cert. denied*, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967). The "four corners of the courtroom" test is really an alternative formulation of the rule that bias must be personal rather than judicial before recusal will be required. The proper distinction is "between a judicial determination derived from evidence and lengthy proceedings before the court, and a determination not so founded upon facts brought forth in court, but based on attitudes and conceptions that have their origins in sources beyond the four corners of the courtroom." *In re Federal Facilities Realty Trust Co.*, 140 F.Supp. 522, 526 (N.D. Ill.1956). Essentially, the importance of the distinction lies not in the physical location of the incidents from which bias is alleged to arise, but in the nature of the incidents as inside or outside the scope of official judicial conduct in regard to the instant or a prior case. *See United States v. Haldeman*, 181 U.S.App.D.C. 254, 356 n.301, 559 F.2d 31, 133 n.301 (1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Gilboy*, 162 F.Supp. 384, 394 (M.D.Pa.1958). "The alleged bias and prejudice to be disqualifying must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). *Compare Grinnell, supra* (no bias based on statements by judge on merits of case at pretrial conference), *and Woodard v. City Stores Co.*, D.C.App., 334 A.2d 189 (1975) (no bias based on comment to counsel at side-bar), *with In re Bell, supra* (bias found based on statements of citing judge to hearing judge in contempt proceeding), *and United States v. Womack, supra* (bias found when trial judge had called defendant a "shady character" during separate trial of codefendant). *Accord, Mims v. Shapp*, 541 F.2d 415 (3d Cir. 1976); *Wolfson v. Palmieri*, 396 F.2d 121, 125 (2d Cir. 1968); 13 Wright, Miller & Cooper, Federal Practice & Procedure § 3542, at 352–53 (1975).

We conclude that the full history of the traffic court incident, including the correspondence with appellant and with Bar Counsel set out by the trial judge in his order, would support an inference of bias having a source "other than what the judge learned from his participation in the [contempt] case." Consequently, the court erred in dismissing this allegation in the affidavit as concerning in-court events. His pursuit of the matter first to the Corporation Counsel's office and then to the Board on Professional Responsibility extended the incident beyond "the four corners of the courtroom."

Having established that appellant's allegation would support a claim of personal, rather than judicial, bias, we must decide "whether these facts would fairly convince a . . . reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute." *United States v. Hanrahan, supra* at 475 (citations omitted). The appropriate test for this determination was set out in *Berger v. United States*, 255 U.S. 22, 33–34, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921):

[T]he reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support

to the charge of a bent of mind that may prevent or impede impartiality of judgment.

It has been held that the test requires application of an objective standard. *Mims v. Shapp, supra* at 417 (test is whether, assuming truth of facts alleged, reasonable persons would conclude that bias exists). *Accord, Parrish v. Board of Commissioners of Alabama State Bar*, 524 F.2d 98, 100 (5th Cir.), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1975); *United States v. Thompson*, 483 F.2d 527 (3d Cir. 1973). The facts as stated must, however, be strong enough to overcome the presumption in favor of a trial judge's impartiality. *See Wolfson v. Palmieri, supra* at 126; *In re Union Leader Corp., supra* at 389; *Craven v. United States*, 22 F.2d 605, 608 (1st Cir.), *cert. denied*, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1927); *Ex parte N. K. Fairbank Co.*, 194 F. 978, 990 (D.C.M.D.Ala.1912); *United States v. Gilboy, supra* at 393.

▮▮▮ It is settled that: "Merely because a trial judge is familiar with a party and his legal difficulties through prior judicial hearings, or has found it necessary to cite a party for contempt, does not automatically or inferentially raise the issue of bias." *Barry v. Sigler*, 373 F.2d 835, 836 (8th Cir. 1967). *See, e. g., Gregory v. United States*, D.C.App., 393 A.2d 132, 142–43 (1978); *United States v. Franks*, 511 F.2d 25, 37–38 (6th Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975); *United States v. Weldon*, 384 F.2d 772, 774 (2d Cir. 1967); *Lyons v. United States*, 325 F.2d 370, 376 (9th Cir. 1963), *cert. denied*, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964). Each case, however, must be judged on its particular facts. *Wolfson v.*

*Palmieri, supra* at 126. In this case, we are confronted with a situation in which appellant was to be tried for contempt of court by a judge who had previously accused him of professional misconduct, participated in the marshalling of evidence to form the basis of a criminal charge against him, sought to initiate criminal proceedings through the Corporation Counsel's office and, being unsuccessful there, sought unsuccessfully to initiate disciplinary action against him. A trial judge's concern with an attorney's professional misconduct in his courtroom is certainly proper and to be expected. Under these circumstances, however, the judge should decline to sit in a contempt proceeding involving that attorney, if the judge's protracted prosecutorial pursuit of the alleged misconduct has caused him to become "so enmeshed in matters involving petitioner as to make it most appropriate for another judge to sit." *Johnson v. Mississippi*, 403 U.S. 212, 215–16, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423 (1971). We emphasize that here it is the extensive and protracted nature of the action taken by the trial judge which causes it to rise to the level of impermissible personal bias.[13] This history of personal involvement with appellant's alleged misconduct is such that it must be said of the trial judge's participation in the contempt case that "his impartiality might reasonably be questioned." ABA Commission on Standards of Judicial Conduct, Code of Judicial Conduct Canon No. 3(c)(1) (1972), adopted for the District of Columbia Courts by the Joint Committee on Judicial Administration on February 16, 1973. We must reverse and remand appellant's second conviction for a new trial before a different judge.[14]

---

13. *Cf. United States v. Dansker*, 537 F.2d 40, 53–54 (3d Cir.), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) in which the Court of Appeals found "troublesome" an allegation in an affidavit of bias that the trial judge, while a U.S. Attorney, had repeatedly and publicly singled out a corporation for investigation. Nevertheless, recusal was not required because, although the corporation was a defendant in the instant case, the court found that the prior investigations had been primarily directed against principals of the corporation

who were not before the court and were no longer associated with the corporation.

14. Appellant's remaining allegations of bias were insufficient to warrant recusal. Appellant's allegation that the judge made "disparaging remarks" about him to a group of lawyers lacks not only the specifics of time, place and identity of the listeners, but also does not even supply the substance of the statements. *See United States v. Haldeman, supra*, 181 U.S. App.D.C. at 358, 559 F.2d at 135; *Morse v. Lewis, supra* at 1032; *Johnson v. United*

*Fine of $500 entered in SP No. 1338–77 is vacated with instructions to enter a new judgment with a fine of $300;*[15] *judgment of fine of $400 is reversed and remanded for a new trial before a different judge.*

States, *supra* at 357; *United States v. Gilboy, supra* at 393. Appellant's contention that the court's striking of his first affidavit evidences bias is also insufficient. *See Barkan v. United States,* 362 F.2d 158 (7th Cir.), *cert. denied,* 385 U.S. 882, 87 S.Ct. 170, 17 L.Ed.2d 109 (1966) (prior adverse rulings do not reflect bias). Finally, the judge's advice to "stay away" from another lawyer who had been accused of soliciting clients, and his continuance of the matter

to permit the Assistant United States Attorney to study the affidavits of bias do not "fairly convince a . . . reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute." *United ed States v. Hanrahan, supra* at 475.

**15.** See our discussion, *supra,* on the authority for this procedure.