In the Matter of Raymond B.
THOMPSON, Appellant.

No. 79–716.

District of Columbia Court of Appeals.

Argued May 8, 1980.

Decided Sept. 4, 1980.

Raymond B. Thompson, pro se.

Barry M. Tapp, Asst. U. S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Pamela M. Sayad, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and PRYOR, Associate Judges.

KELLY, Associate Judge:

Appellant appeals from his convictions on three counts of contempt of court, arguing that the trial judge erred in failing to recuse himself, sua sponte, from the contempt proceedings and that there was insufficient evidence to support his convictions. We find no error in the trial judge's failure to recuse himself. We do, however, agree that there was insufficient evidence to support one contempt conviction; consequently, we reverse that conviction and otherwise affirm.

On April 9, 1979, appellant was appointed to represent James Holden, a defendant in a criminal proceeding in Superior Court. A forensic mental examination of Holden was ordered. that day; a second examination was ordered on April 10, and the case was continued to May 15. When appellant failed to appear before Judge Fauntleroy on May 15, the case was continued, in his absence, to May 22. Appellant failed to appear on May 22 before Judge Joseph M. Hannon, who was then sitting as the Mental Competency Hearing Judge, but he did call the courtroom clerk and obtain a continuance of the case until May 29. After appellant again failed to appear on May 29, Judge Hannon removed him from the case and appointed another attorney.

On June 4, 1979, Judge Hannon ordered appellant to show cause why he should not be held in contempt of court for his failure to appear in Mr. Holden's behalf on May 15, 22, and 29. At the subsequent show cause hearing, appellant claimed that he had no knowledge of the May 15 hearing and no prior notice of the May 22 continuance date. He explained that while he was on his way out of town on May 22, another attorney told him he was supposed to be before Judge Hannon that day. He tried to call the courtroom, but got no answer. When he got to the airport, he called again and was assured by the courtroom clerk that the case would be continued until May 29. The clerk, however, gave him the case name of Angelo Norman rather than James Holden, and appellant consequently wrote the wrong name in his calendar under the date of May 29.

On May 29, appellant was detained in New York on a case that had been continued from May 25. He had his secretary continue all the matters he had scheduled that day, including the case of Angelo Nor-

man; he did not learn that the May 29 hearing was for James Holden until he returned to Washington.

Judge Hannon did not credit appellant's testimony. He relied instead on court records indicating that appellant was present in court when Holden's case was continued to May 15, and on the testimony of the courtroom clerk that he had not given appellant the wrong case name. He found appellant in contempt on all three dates and sentenced him to a fine of $100 for each count.

I

■ Appellant's first argument is that the trial judge erred in failing to recuse himself, sua sponte, from the contempt proceedings. Essentially, he contends that the judge's multiple role as complaining witness, prosecutor, and fact–finder denied him his Fifth Amendment right to due process of law. Because appellant failed to raise this issue in the trial court,[1] we review the judge's actions only for plain error affecting substantial rights. *Woodard v. City Stores Company*, D.C.App., 334 A.2d 189, 192 (1975).

■ Appellant was cited for contempt pursuant to Super.Ct.Cr.R. 42(b), which provides for an adjudication upon notice and a hearing.[2] The rule also states that, "[i]f the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent." *Id.* The conduct with which appellant was charged is not the type of conduct envisioned by the rule. A failure to appear in court is "disrespect toward the court, as a court, that is inherent in any disobedience of a court order." *In re Schaeffer*, D.C.

---

1. Appellant neither filed an affidavit of bias pursuant to Super.Ct.Civ.R. 63–I, made applicable to criminal proceedings by Super.Ct.Cr.R. 57(a), nor raised the issue of bias orally at the hearing.

2. In contrast, Super.Ct.Cr.R. 42(a) allows for summary disposition of contempt charges if the contemptuous conduct is committed in the ac-

tual presence of the court. We note that this court on numerous occasions has construed an attorney's failure to appear in court as punishable under Rule 42(a). *In re Gratehouse*, D.C. App., 415 A.2d 1388 (1980); *In re Gregory*, D.C.App., 387 A.2d 720, 722 (1978); *In re Rosen*, D.C.App., 315 A.2d 151, *cert. denied*, 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974).

App., 370 A.2d 1362, 1363 (1977). It is not conduct that would cause the judge to be "so 'personally embroiled' with a lawyer in the trial as to make [him] unfit to sit in judgment on the contempt charge." *Mayberry v. Pennsylvania*, 400 U.S. 455, 465, 91 S.Ct. 499, 505, 27 L.Ed.2d 532 (1971).[3]

■ Beyond the specific language of Rule 42(b), a judge ordinarily need not recuse himself from matters before him if the alleged bias stems from a source within the "four corners of the courtroom." *In re Evans*, D.C.App., 411 A.2d 984, 995 (1980) (citing *Tynan v. United States*, 126 U.S. App.D.C. 206, 210, 376 F.2d 761, 765, *cert. denied*, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967)). In other words, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). In addition, the bias must be personal, rather than judicial, in nature. *See, e. g., In re Evans, supra* (recusal required where judge had previously reported separate incident involving attorney to Corporation Counsel and to the Board on Professional Responsibility); *In re Bell*, D.C.App., 373 A.2d 232 (1977) (recusal necessary where judge who cited attorney for contempt contacted hearing judge and expressed his opinion that the attorney was guilty of contempt charge).

■ Appellant has claimed no incidents of bias or prejudice that stem from sources outside the scope of the judge's judicial functions.[4] Judge Hannon's decision to hold appellant in contempt was based on information elicited during proceedings within the courtroom about actions taken, or not taken, in the case before him. There are no allegations that the judge was personally biased against him, or that he had extrajudicial contact with any of the other judges involved in the case. To accept appellant's argument that a judge may not prefer, try, and decide contempt charges stemming solely from actions within the "four corners of the courtroom" would preclude any summary proceedings under Rule 42(a)[5] and all other proceedings under Rule 42(b) in which the judge did not recuse himself. We find no error in Judge Hannon's actions.

## II

Appellant also challenges the sufficiency of the evidence supporting his convictions, arguing that there was no showing that his failure to appear in court resulted from a willful, deliberate, or reckless disregard of his professional obligations. *In re Denney*, D.C.App., 377 A.2d 1360, 1363 (1977).

■ This argument is unpersuasive with respect to the convictions for the May 15 and May 29 conduct. Although appellant claimed he had no notice of Mr. Holden's May 15 mental observation hearing, the court jacket, which was before Judge Hannon, indicated that appellant was present in the courtroom when the hearing was scheduled for that date.[6] It was within Judge

---

3. In *Mayberry*, a hearing before another judge was found necessary where the lawyer had called the judge a "dirty sonofabitch," "stumbling dog," and "fool," had charged the judge with running a Spanish Inquisition, and had told him to go to hell and keep his mouth shut. *Mayberry v. Pennsylvania, supra* 400 U.S. at 466, 91 S.Ct. at 505.

4. Relying on *In re Gates*, 156 U.S.App.D.C. 88, 478 F.2d 998 (1973), appellant argues that, because he contacted Judge Hannon's courtroom from *outside the court* on May 29, his case falls within those requiring recusal. The *Gates* court, however, merely raised the question, without deciding, whether, "when [the court]

apprehends that the issue of contempt for tardiness in the courtroom involves, by way of excuse, matters outside the presence of the court," the matter should be transferred to another judge. *Id.* at 90, 478 F.2d at 1000. We do not find that appellant's telephone call from the airport raises an issue outside the courtroom, nor do we read *Gates* so broadly as to require reversal in this case. *See In re Schaeffer, supra* at 1363–64.

5. *See* note 2 *supra*.

6. The transcript of the hearing on April 10, which is part of the record on appeal, supports Judge Hannon's decision. It shows that not

Hannon's discretion to discredit appellant's testimony and we will not disturb his finding on appeal.

"An attorney has a clear obligation to avoid scheduling conflicts which disrupt the efficient administration of the judicial system." *In re Gratehouse, supra,* at 1390 (citing *In re Hunt,* D.C.App., 367 A.2d 155, 157 (1976), *cert. denied,* 434 U.S. 817, 98 S.Ct. 54, 54 L.Ed.2d 72 (1977)). Moreover, all attorneys practicing before the Superior Court have an obligation to inform the court personally and promptly of all scheduling conflicts, to achieve a resolution of the problem at the earliest possible time, and, if he or she has obtained a rescheduling from outside the court, to appear personally before the judge as soon as possible to confirm the reset date. Super.Ct.Civ.R. 104(c)(2), (3), (4), made applicable to criminal proceedings by Super.Ct.Cr.R. 57(a).

Appellant failed to appear personally before Judge Hannon after telephoning the courtroom clerk from the airport on May 22.[7] He then went back to New York and was detained there on a case that was continued from Friday, May 25 to Tuesday, May 29.[8] Yet there is no indication that he made any attempt to resolve his scheduling conflict until May 29, when he asked his secretary to intervene for him and gave her the wrong name of the case to continue.[9] We conclude that there was abundant evidence from which Judge Hannon could infer that appellant's conduct was in reckless disregard of his professional obligations.

However, the record contains no evidence that appellant had any prior notice of the May 22 hearing. One cannot be contemptuous of a court order if he has no knowledge of it. *See Douglass v. First National Realty Corp.,* 177 U.S.App.D.C. 409, 412, 543

F.2d 894, 897 (1976). Consequently, we must reverse that conviction.

*Affirmed in part and reversed in part.*

---

only was appellant present in court when the case was rescheduled, it was he who suggested the May 15 date. We consider his contrary representation to Judge Hannon and to this court reprehensible.

7. Had he done so, perhaps the confusion in case names could have been settled at an early date and many of the problems with this case avoided.

8. Monday, May 28, 1979 was a holiday.

9. Superior Ct.Civ.R. 104(c)(1) requires all attorneys to carry with them a calendar of all future court appearances. This requirement would be useless if we did not hold attorneys to an obligation to use the calendar responsibly.