UNITED STATES of America,
Plaintiff-Appellee,

v.

Ali Ahméd HAMDAN and Shirley Ann Bush, Defendants-Appellants.

No. 75–3758.

United States Court of Appeals,
Ninth Circuit.

Feb. 25, 1977.

John L. Weir, San Francisco, Cal., for defendants-appellants.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before BROWNING and WALLACE, Circuit Judges, and VAN PELT,* District Judge.

PER CURIAM:

Hamdan and Bush were convicted after a court trial of violating 8 U.S.C. § 1306(c) by making false statements in documents filed with the Immigration and Naturalization Service. Both claim that they were improperly denied a jury trial and the evidence was insufficient to support their convictions.

Hamdan is a citizen of Jordan, admitted to the United States as a nonimmigrant student. Bush is a citizen of Panama and a permanent resident alien. They were married on July 23, 1974. In August 1974 Hamdan applied for permanent resident status, alleging he resided with Bush in Foster City, California. At the same time, Bush filed a supporting document stating she resided with Hamdan. Later investigation revealed Bush actually lived in an apartment in San Francisco.

A complaint was filed charging Hamdan and Bush with violating section 1306(c), which authorizes imposition of a fine of not more than $1,000, imprisonment for not more than six months, or both. They refused to consent to trial before a magistrate. 18 U.S.C. § 3401(b). The district judge denied their motion for a jury trial, and after hearing the evidence found them guilty.

Hamdan and Bush contend the denial of a jury trial was constitutional error. Article III, section 2 of the Constitution provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ." The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

■ At the time these provisions were adopted, the common law practice in both England and the Colonies was to try persons accused of certain "petty offenses" without a jury. Thus, in spite of the all-inclusive language of the Constitution, it has been held that there is no right to a jury trial in the prosecution of a petty offense. *Frank v. United States,* 395 U.S. 147, 148, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Cheff v. Schnackenberg,* 384 U.S. 373, 379, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966) (plurality opinion); *District of Columbia v. Clawans,* 300 U.S. 617, 624–26 & nn. 2–4, 57 S.Ct. 660, 81 L.Ed. 843 (1937).

■ The Court of Appeals for the District of Columbia Circuit has held that if the accused is an individual, the line of demarcation between serious and petty offenses for purposes of the Sixth Amendment right to jury trial should be drawn in accordance with the standard provided by 18 U.S.C. § 1(3) when the penalty is a fine as well as when it is imprisonment. *Douglass v. First National Realty Corp.,* 543 F.2d 894 (D.C.Cir.1976). This solution best accommodates the interests involved.

■ A jury is interposed to protect the accused from the power of government when the charge against him is a serious one. *Baldwin v. New York,* 399 U.S. 66, 72, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). An offense may be serious enough to require a jury trial because of the severity of the penalty, aside from the inherent nature of the crime. *Id.* at 69 n. 6, 90 S.Ct. 1886.

· The usual penalties are fine and imprisonment. As to imprisonment, the Supreme Court has drawn the line at six months, in part because 18 U.S.C. § 1(3) establishes this maximum period of incarceration as an objective criterion of a "petty offense." *Duncan v. Louisiana,* 391 U.S. 145, 161, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Frank v. United States,* 395 U.S. 147, 150–51, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). The statutory definition reflects Congress's "long-standing judgment that '[n]otwithstanding any Act of Congress to the contrary . . . [a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period

---

* Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

of six months or a fine of not more than $500, or both, is a petty offense.'" *Baldwin v. New York, supra,* 399 U.S. at 73 n. 21, 90 S.Ct. at 1890.[1]

As to a fine, the Supreme Court in *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), declined to adopt section 1(3)'s $500 maximum as the invariable criterion of an offense triable without a jury. The Court did not say that a fine could never be of sufficient magnitude to require a jury trial.[2] The Court noted, however, that for purposes of determining the seriousness of an offense, imprisonment and fine "are intrinsically different." *Id.* at 477, 95 S.Ct. 2178. A six months' jail sentence "is a serious matter for any individual," but "it is not tenable to argue that the possibility of a $501 fine would be considered a serious risk to a large corporation or labor union." *Id.* The union involved in *Muniz* had 13,000 members. The fine imposed upon the union was $10,000, or about 75 cents for each member. This fine, the Supreme Court held, was not "a deprivation of such magnitude that a jury should have been interposed to guard against bias or mistake." *Id.*

The dissent concludes that because section 1(3)'s monetary standard was not applied in *Muniz* it is not available in this case and that *Muniz* compels us to make a "case-by-case evaluation of 'the seriousness of the risk and the extent of the possible deprivation.'" This generalization is not further particularized. The dissent simply concludes that appellants failed to demonstrate that "a possible $1000 fine imposes such a risk upon them that a jury trial is constitutionally required."

This is not a satisfactory solution.

If the "seriousness of the risk and the extent of the deprivation" were to be evaluated on the basis of the circumstances of each case, the ability of the particular defendant to pay a particular fine would be an important factor. This would mean that where the statute fixes a maximum monetary penalty, as in this instance, some persons accused of the offense would be entitled to a jury trial and others charged with the same offense would not, depending upon the extent of the individual defendant's financial resources. This determination would have to be made in advance of trial in order to decide whether a jury was required as to the particular defendant. Where the maximum fine is not stipulated by statute (as in the case of most criminal contempts), the fine to be imposed if the accused were convicted, as well as his ability to pay it, would have to be determined in advance of the trial.

Moreover, the "seriousness of the risk and the extent of the possible deprivation" does not afford a workable standard for deciding specific cases with any reasonable degree of uniformity or predictability. Trial and appellate judges would have no guide for determining whether the deprivation was serious enough to require a jury trial except their own judgment concerning the seriousness of the risk. Even if the determination were confined to financial considerations, the potential for varying judgments would be great.

The Supreme Court has repeatedly asserted that the right to a jury trial should depend not upon the predelictions of the particular judge, but upon application of

---

1. The Supreme Court's repeated reliance upon the section 1(3) standard in determining whether an offense is serious enough to require a jury trial demonstrates the irrelevance of the dissent's comment that the legislative history of the statute does not indicate that it was enacted with this purpose in mind.

2. It is clear that Article III, section 2 and the Sixth Amendment apply to crimes punishable by fine. Neither Article III nor the Sixth Amendment distinguishes between crimes punishable by imprisonment and crimes punishable by fine. Both types of punishment are subject to abuse through government bias or arbitrariness. Further, protection of property interests occupies an important place in the constitutional scheme; and deprivation of property can have a serious impact on an individual. *See, e. g., Argersinger v. Hamlin,* 407 U.S. 25, 48, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (Powell, J., concurring). A non-indigent who refuses or neglects to pay a fine can be imprisoned. *Tate v. Short,* 401 U.S. 395, 400, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

objective standards reflected in the law and practices of the community—in the federal system, the standards articulated in section 1(3). *Duncan v. Louisiana, supra,* 391 U.S. at 161, 88 S.Ct. 1444; *Frank v. United States, supra,* 395 U.S. at 148, 151, 89 S.Ct. 1503; *Baldwin v. New York, supra,* 399 U.S. at 70–76, 90 S.Ct. 1886. *See also District of Columbia v. Clawans,* 300 U.S. 617, 627–28, 57 S.Ct. 660, 81 L.Ed. 843 (1937). As the District of Columbia Circuit said in *Douglass v. First National Realty Corp., supra,* 543 F.2d at 902, "nowhere else in federal law or practice are we able to detect any other benchmark of seriousness or pettiness in monetary criminal penalties."

■ Clearly, the interests of uniformity, objectivity, and practical judicial administration would be served by accepting this statutory standard as the monetary measure of a serious offense for the purposes of the right to jury trial. It is not unrealistic to treat any fine in excess of $500 as a serious matter to all individuals, even though they may vary in their ability to sustain incarceration far in excess of six months.[3] *Muniz* is not to the contrary. Nothing in the opinion in that case suggests that a jury trial would not have been required if the fine imposed had had the impact of a $500 fine upon each of the 13,000 individuals who were members of the union.[4]

■ We hold, therefore, that appellants are entitled to a jury trial.

Reversed.

WALLACE, Circuit Judge, dissenting:

I respectfully dissent.

The problem before us is to distinguish "petty" from "serious" offenses. Courts have focused on two criteria in distinguishing petty from serious crimes. The first criterion is the intrinsic nature of the crime regardless of the authorized punishment. *See Callan v. Wilson,* 127 U.S. 540, 555–57, 8 S.Ct. 1301, 32 L.Ed. 223 (1888). It was thought at one time that the classification of an offense depended "primarily upon the nature of the offense." *District of Columbia v. Colts,* 282 U.S. 63, 73, 51 S.Ct. 52, 53, 75 L.Ed. 177 (1930).[1]

There is a recent trend, however, which emphasizes the relevance of the maximum punishment authorized by the statute violated. *Muniz v. Hoffman,* 422 U.S. 454, 480 n. 6, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975) (Douglas, J., dissenting); *Codispoti v. Pennsylvania,* 418 U.S. 506, 511–12, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Frank v. United States,* 395 U.S. 147, 148, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). This criterion provides a more objective and workable standard for determining when the right to jury trial at-

**3.** The value of money changes, of course, as does the wealth of the economy. But Congress can be expected to adjust the monetary standard of section 1(3) so that it will continue to represent a fair judgment as to the appropriate line between petty and serious offenses. To cite two random examples: (1) the fine for a criminal violation of the Sherman Act, 15 U.S.C. § 1, *et seq.,* 26 Stat. 209, was raised from $5,000 to $50,000 in 1955 (69 Stat. 282) and, in 1974, from $50,000 to $1,000,000 for a corporation and $100,000 for "any other person" (Antitrust Procedures and Penalties Act, Pub.L. No. 93–528, Section 3, 88 Stat. 1708); and (2) in 1970, Congress increased the penalty for violating the fuel additives provisions of the Air Quality Act of 1967, 42 U.S.C. § 1857f–6c, 81 Stat. 502, from $1,000 to $10,000 (Clean Air Act Amendments of 1970, 84 Stat. 1700).

Whether § 1(3) reflects an appropriate referent in determining the constitutional standard in light of future changes in the value of money

or in future amendments of the statute will, of course, remain a question for the courts to determine. *Duncan v. Louisiana,* 391 U.S. 145, 160, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

**4.** The dissent's conclusion that "a crime punishable by a petty term of imprisonment plus a petty fine is no more serious than if the only punishment authorized were the prison term or fine alone" is simply a direct application of the definition of "petty offense" in § 1(3). *See United States v. Goeltz,* 513 F.2d 193 (10th Cir. 1975); *United States v. Merrick,* 459 F.2d 644 (4th Cir. 1972); ABA Project on Standards for Criminal Justice, Advisory Committee on the Criminal Trial, Trial by Jury, at 21 (Approved Draft 1968).

**1.** *See* Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv.L.Rev. 917, 927 (1926).

taches. *Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970) (plurality opinion).

Hamdan and Bush do not contend that their crime is intrinsically of a serious nature but that the maximum punishment authorized by section 1306(c) is sufficiently severe that the crime cannot be regarded as petty. In support of this proposition, they rely first on *Baldwin v. New York, supra,* 399 U.S. at 69, 90 S.Ct. 1886, which held that where the maximum punishment authorized exceeds six months' imprisonment, there is a constitutional right to a jury trial. Although the maximum term of imprisonment authorized by section 1306(c) does not exceed six months, Hamdan and Bush argue that an authorized sentence of exactly six months plus a fine is equivalent to imprisonment in excess of six months and thus triggers the right to a jury trial.

I cannot accept this reasoning. The Supreme Court has never considered the relationship between authorized imprisonment and fines in determining which crimes are serious offenses. Indeed, I cannot conceive any basis for converting any given dollar fine into an equivalent number of days in prison. I conclude that a crime punishable by a petty term of imprisonment plus a petty fine is no more serious than if the only punishment authorized were the prison term or fine alone.

Because the six-month prison term authorized by section 1306(c) is clearly petty, *Baldwin v. New York, supra,* Hamdan and Bush must show that the $1,000 fine authorized by that statute is serious in order to prevail. For this purpose, they rely on a federal statute which, in classifying offenses, provides:

> Notwithstanding any Act of Congress to the contrary:
>
> .   .   .   .   .
>
> (3) Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense.

18 U.S.C. § 1. Hamdan and Bush argue that their violations of section 1306(c) are not petty offenses within this definition and, therefore, they are entitled to a jury trial.

The majority accepts this argument. In light of *Muniz v. Hoffman, supra,* I cannot. There, the Supreme Court affirmed our judgment that a labor union had no right to a jury trial even though it had been fined $10,000 for criminal contempt. 422 U.S. at 477, 95 S.Ct. 2178, *aff'g Hoffman v. Longshoremen's Local 10,* 492 F.2d 929, 937 (9th Cir. 1974). In making this determination, the Court first analyzed the distinction between imprisonment and payment of a fine.

> It is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, *regardless of the circumstances,* a jury is required where any fine greater than $500 is contemplated. From the standpoint of determining the seriousness of the risk and the extent of the possible deprivation faced by a contemnor, imprisonment and fines are intrinsically different.

422 U.S. at 477, 95 S.Ct. at 2191 (emphasis added). The Court then made a particularized analysis of the facts in the case.

> [A]lthough we do not reach or decide the issue tendered by the Government—that there is no constitutional right to a jury trial in any criminal contempt case where only a fine is imposed on a corporation or labor union, Brief for Respondent 36—we cannot say that the fine of $10,000 imposed on Local 70 in this case was a deprivation of such magnitude that a jury should have been interposed to guard against bias or mistake. This union, the Government suggests, collects dues from some 13,000 persons; and although the fine is not insubstantial, it is not of such magnitude that the union was deprived of whatever right to jury trial it might have under the Sixth Amendment.

*Id.*

I conclude from the Court's particularized analysis of the facts before it and its reference to the significance of circumstances in

determining the seriousness of a fine, that the Court requires a case-by-case evaluation of "the seriousness of the risk and the extent of the possible deprivation" in determining whether a defendant has a constitutional right to a jury trial. Rather than carrying out this mandate and evaluating this case on its particular facts, however, the majority establishes a rigid standard based on 18 U.S.C. § 1(3). This is inconsistent with the *Muniz* approach.

In addition, as a matter of historical analysis, 18 U.S.C. § 1(3) has little to recommend it as a standard for determining when a jury trial is constitutionally required. *See generally* Case Note, 1976 B.Y.U.L.Rev. 549, 557–59. The legislative history of the statute does not indicate that 18 U.S.C. § 1(3) was meant to define the crimes for which there is no right to a jury.[2] The majority attempts to downplay the significance of this history by noting that the Supreme Court has repeatedly relied upon section 1(3) in determining whether an offense is serious enough to require a jury trial. But this assertion is not supported by the cases. *Muniz* clearly indicates that while "the Court has referred to the relevant rules and practices followed by the federal and state regimes, including the definition of petty offenses under 18 U.S.C. § 1(3)," that section has no "talismanic significance." 422 U.S. at 476–77, 95 S.Ct. at 2190. Moreover, the majority's claim that the Court has "repeatedly relied" upon the statute implies a constancy which is belied by an examination of the Supreme Court cases themselves. At times, the Court has referred to section 1(3) in its analysis without actually adopting its terms; at other times, it has ignored the section. *Compare Baldwin v. New York, supra,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437, *Frank v. United States, supra,* 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162, *and Duncan v. Louisiana, supra,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, *with Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), *and Codispoti v. Pennsylvania, supra,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912. Thus, I see little historical basis for adopting the dollar figure in 18 U.S.C. § 1(3) to determine the constitutional right to a jury.

There is further mischief which results from the majority's decision to draw a $500 line between fines where a jury trial is constitutionally required and fines where it is not. Although adoption of a definite dollar standard admittedly simplifies the judicial task, it also creates a rigidity which is unsuitable for measuring constitutional rights, considering the changing value of the dollar. As an illustration, if inflation continued and the value of the dollar dropped to 20% of its current value, a $501 fine would still require a jury trial, even though the real risk to the defendant, measured in current dollars, would be only $100.20. This would occur whether or not the risk involved bore any relation to contemporary judgments concerning the distinction between serious and petty offenses. This demonstrates that it is inappropriate to base a constitutional standard on a foundation which may be undermined by the vagaries of the economy.

The majority suggests that if the value of money changes, "Congress can be expected to adjust the monetary standard of section 1(3) so that it will continue to represent a fair judgment as to the appropriate line between petty and serious offenses." I find little comfort in this easy prediction. First, Congress has not seen fit to alter the $500 figure established in 18 U.S.C. § 1(3) since that section was first passed in 1930, although there have been recodifications of the section since that time.[3] No citation of authority is necessary to establish the fact that the value of the dollar has depreciated

---

**2.** This definition of petty offense was added in 1930 in order to identify a special class of misdemeanors of minor gravity to be tried, as proposed by other legislation which failed, by United States Commissioners. *See Duke v. United States,* 301 U.S. 492, 494, 57 S.Ct. 835, 81 L.Ed. 1243 (1937).

**3.** The $500 figure now incorporated in 18 U.S.C. § 1(3) was first added to the criminal code by the Act of Dec. 16, 1930, ch. 15, 46 Stat. 1029.

substantially in the last 47 years. Thus, there is little factual basis for assuming that Congress will adjust the monetary standard of 18 U.S.C. § 1(3) in the event of further changes in the value of the dollar.

More importantly, there are grave constitutional difficulties involved in the mere possibility that Congress could amend the statute and thereby modify the constitutional right to a jury trial. The Sixth Amendment acts as a check upon Congress as well as upon the other branches of the federal government. When Congress by statute distinguishes between serious offenses, requiring a jury trial, and petty offenses, requiring no jury trial, it is the duty of the courts to review the distinction made by Congress in order to determine whether it comports with the Sixth Amendment. *See Duncan v. Louisiana, supra,* 391 U.S. at 160, 88 S.Ct. 1444. The court abrogates its role as a check upon Congress when it establishes a test of constitutional validity which is contingent upon actions of Congress approved in advance. *See Frank v. United States, supra,* 395 U.S. at 156, 89 S.Ct. 1503 (Warren, C. J., dissenting). I find this unacceptable.

I conclude that the result arrived at by the majority not only is inconsistent with *Muniz* but also lacks support in either historical analysis or jurisprudential logic. To determine whether the $1000 fine authorized by section 1306(c) is enough to entitle Hamdan and Bush to a trial by jury on constitutional grounds, we should evaluate the particular facts of this case. With the record in its present state, however, it is not possible to evaluate the "seriousness of the risk and the extent of the possible deprivation" to either Hamdan or Bush. It was their responsibility to demonstrate whether a possible $1000 fine imposes such a risk upon them that a jury trial is constitutionally required. Because they failed to meet that burden, I would affirm the judgment.