Brent R. BRONSON, Petitioner,

v.

Vincent SWINNEY, et al., Respondents.

No. CV–R–86–130–ECR.

United States District Court,
D. Nevada.

Sept. 29, 1986.

On Motion to Alter or Amend
Judgment Dec. 5, 1986.

Dennis E. Widdis, Washoe County Public Defender's Office, Reno, Nev., for petitioner.

Office of Atty. Gen. by James J. Rankl, Deputy Atty. Gen., Carson City, Nev., for respondents.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., Chief Judge.

Brent R. Bronson petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied his constitutional right to a jury trial.

On December 29, 1984, petitioner was stopped on Interstate Route 80 by a Nevada Highway Patrol officer for speeding and weaving. Petitioner failed a field sobriety test and was transported to the county jail for a chemical test, which he refused.

Petitioner was charged with three misdemeanors: driving while intoxicated, failure to drive within one traffic lane, and unnecessary waste of a resource currently in short supply. Under Nevada law a first offense of driving while intoxicated is punishable by payment of tuition for and attendance of an educational course on the abuse of alcohol and controlled substances, imprisonment for not less than two days nor more than six months in jail (or performance of forty-eight hours of work for the community while dressed in distinctive garb), and a fine of not less than $200 nor more than $1,000.[1] NRS § 484.3792. In

---

1. There is one exception to the punishment described. A person found guilty of driving while intoxicated for the first time may apply to the court to undergo a program of treatment for alcoholism or drug abuse if he is classified as an alcoholic or abuser of drugs by one certified to make that classification and if he agrees to pay the costs of the treatment. The first offender

addition, there are collateral consequences of a conviction for driving while intoxicated that will be discussed below. Failure to drive within one traffic lane is punishable under Nevada law by imprisonment in the county jail for not more than six months, or a fine of not more than $1,000, or both. NRS §§ 484.305, 484.251, 193.150. The offense of wasting a resource in short supply, committed by driving between the speeds of fifty-five and seventy miles per hour, is punishable under Nevada law by a fine of $5. NRS § 484.362.

The criminal complaint was filed in Reno Justice Court. Petitioner filed a demand for a jury trial, which was denied.

A bench trial ensued. Petitioner was convicted on all three counts; he was sentenced to four days in jail, fined $430, ordered to pay a $30 administrative assessment, and ordered to attend an educational course on the abuse of alcohol and controlled substances. On appeal the district court affirmed the convictions, but held that petitioner could not receive separate sentences for driving while intoxicated and for failing to drive within one traffic lane since those offenses arose from identical circumstances and merged for purposes of sentencing. The court remanded for resentencing with the requirement that the sentence not exceed the maximum penalty for commission of a single misdemeanor. Upon remand, the justice court sentenced petitioner to four days imprisonment in the county jail and imposed a fine of $460. Petitioner appealed to the Nevada Supreme Court, but that court dismissed for lack of jurisdiction.

While in custody, petitioner applied for habeas corpus relief contending that the Nevada court's refusal to allow him a jury trial violated his constitutional rights.

The Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." The United States Supreme Court, in *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), held that the right to trial by jury guaranteed by the Sixth Amendment is a fundamental right and is one guaranteed as against the states by the Fourteenth Amendment.

Explaining why the right to trial by jury is fundamental, Justice White wrote:

The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or over-zealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Be-

---

who is allowed to undergo such treatment must still serve a one-day term in jail or perform twenty-four hours of work for the community. The treatment must last at least one year and cannot exceed three years. During the treatment, the offender may be confined in an institution or, at the discretion of the facility, released for treatment or supervised aftercare in the community. If the offender accepts such treatment, final sentencing is postponed. After successful treatment, the offender may not be sentenced to more than one day in jail (or twenty-four hours of community work) and/or $200. If the offender is not accepted for treatment or fails to complete the treatment satisfactorily, he must be sentenced to the fine and imprisonment to which he would have been sentenced had he not been allowed treatment; such imprisonment is reduced by time equal to that which he served before beginning treatment. NRS §§ 484.3792, 484.3794.

yond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges.

*Duncan,* 391 U.S. at 155–156, 88 S.Ct. at 1451.

Despite the broad language of the Constitution, and despite the importance of the right to trial by jury, courts have consistently held that the Sixth Amendment guarantees a jury trial only to defendants charged with "serious" offenses; defendants charged with "petty" offenses are not constitutionally entitled to a jury trial. *Duncan,* 391 U.S. at 159, 88 S.Ct. at 1452.

The determination whether an offense is petty or serious is made on the basis of objective criteria reflecting the seriousness with which society regards the offense. *Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 1887, 26 L.Ed.2d 437 (1970) (plurality opinion); *District of Columbia v. Clawans,* 300 U.S. 617, 628, 57 S.Ct. 660, 663, 81 L.Ed. 843 (1937).

■ The most important criterion in determining the seriousness with which society regards an offense is the maximum authorized penalty (i.e., the maximum imprisonment and fine authorized as punishment for the offense). *Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 1887, 26 L.Ed.2d 437 (1970); *Frank v. United States,* 395 U.S. 147, 148, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969); *Duncan v. Louisiana,* 391 U.S. 145, 159–161, 88 S.Ct. 1444, 1452–1454, 20 L.Ed.2d 491 (1968); *U.S. v. Jenkins,* 734 F.2d 1322 (9th Cir. 1983); *United States v. Hamdan,* 552 F.2d 276 (9th Cir.1977). Generally, petty offenses are those with a maximum penalty of up to six months imprisonment and a $500 fine. *See Baldwin v. New York,* 399 U.S. 66, 71, 90 S.Ct. 1886, 1889, 26 L.Ed.2d 437 (1970); *Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 1452, 20 L.Ed.2d 491 (1968); *United States v. Arbo,* 691 F.2d 862, 863 (9th Cir.1982); *United States v. Hamdan,* 552 F.2d 276 (9th Cir.1977).

On the other hand, the maximum authorized penalty is not the only relevant factor in determining whether an offense is serious or petty. *United States v. Craner,* 652 F.2d 23 (9th Cir.1981); *United States v. Sanchez-Meza,* 547 F.2d 461 (9th Cir. 1976). In *Craner,* the court said:

"Although Congress has established the sanctions of six·months' imprisonment or $500 in fines as the bright line between serious and petty offenses, *see* 18 U.S.C. § 1(3), the Supreme Court has not found 'talismanic significance' in this formula when determining whether a constitutional right to a jury trial exists."

*Craner,* 652 F.2d at 25, *citing Muniz v. Hoffman,* 422 U.S. 454, 477, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975). The Ninth Circuit Court of Appeals also said:

Justice White, writing for three members of the Court in *Baldwin,* stated that "a potential sentence of more than six months' imprisonment is sufficiently severe by itself to take the offense out of the category of 'petty'." No member of the Court expressed the view that a lesser potential sentence requires classification of an offense as petty.

*Craner,* 652 F.2d at 25.

■ Some factors other than the maximum authorized penalty that reflect the seriousness with which society regards an offense are the collateral consequences of a conviction, *United States v. Craner,* 652 F.2d 23 (9th Cir.1981); the nature of the offense, *United States v. Sanchez-Meza,* 547 F.2d 461 (9th Cir.1976); and the treatment of the offense at common law, *Id.*

In *United States v. Craner,* 652 F.2d 23 (9th Cir.1981), the Ninth Circuit Court of Appeals held that the offense of driving under the influence of alcohol in Yosemite National Park is a serious offense. *See also, U.S. v. Woods,* 450 F.Supp. 1335 (D.Md.1978). The defendant in *Craner* was found to have a constitutional right to a jury trial. In holding that the offense is serious the court looked at factors other than the maximum authorized penalty for

the offense, which was six months' imprisonment and a $500 fine.

The court primarily looked to the fact that if convicted of driving under the influence of alcohol in Yosemite National Park, Craner could have lost his California driver's license. *Craner,* 652 F.2d at 25. The court said that "[a]lthough a license revocation is itself a regulatory, not a punitive action, *United States v. Best,* 573 F.2d 1095, 1099 (9th Cir.1978), the threat of loss of a license as important as a driver's license, a deprivation added to penal sanctions, is another sign that the DUI defendant's community does not view DUI as a petty offense." *Craner,* 652 F.2d at 26.

The court also looked to *District of Columbia v. Colts,* 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930) in which the Supreme Court held that reckless driving was both indictable at common law and *malum in se,* and hence, serious. *Craner,* 652 F.2d at 26.

Finally the court looked to the relevant state and federal practice, pointing out that "[a]t least seven of the states in this Circuit guarantee the D.U.I. defendant the right to a jury trial."[2] *Craner,* 652 F.2d at 27.

Driving under the influence of alcohol in Yosemite National Park is a violation of regulations promulgated by the Secretary of Interior. *See* 16 C.F.R. § 4.6 (1980).

The penalty imposed for the offense was the greatest the Secretary had power to impose. 16 U.S.C. § 3. Judge Sneed, concurring in the result only, said that he would not have looked beyond the maximum authorized punishment had the punishment been established by a legislature instead of by the Secretary of Interior, whose power to impose punishments for the offense was limited. *Craner,* 652 F.2d at 27–28 (Judge Sneed, concurring). *See also United States v. Arbo,* 691 F.2d 862, 864 (1982).

However, as noted above, the maximum authorized penalty for an offense is not the sole criterion reflecting the seriousness with which society regards an offense. *United States v. Sanchez-Meza,* 547 F.2d 461 (9th Cir.1976). The cases are unclear as to exactly when and to what extent other criteria are important. In this case, because of the clear import of other criteria, the Court must look beyond the maximum authorized penalty.

In the case at bar, the nature of the offense, the collateral consequences of a conviction for the offense, and the fact that the penalty for the offense includes mandatory imprisonment are factors that reflect the seriousness with which society regards the offense of driving while intoxicated. These are factors that cannot be ignored in

---

2. By actual count the *Craner* court found eight states with authority requiring a jury trial in DUI cases. The court in *Craner* pointed to the following authorities:

Alaska: *Baker v. Fairbanks,* 471 P.2d 386 (Alaska 1970).

Arizona: *Rothweiler v. Superior Ct.,* 100 Ariz. 37, 410 P.2d 479 (1966).

California: *Mills v. Municipal Ct.,* 10 Cal.3d 288, 110 Cal.Rptr. 329, 515 P.2d 273 (1973); Cal.Const. art. I, § 16; Cal.Penal Code § 689 [*see also* Cal.Veh.Code § 23152.]

Hawaii: *State v. Shak,* 51 Haw. 612, 466 P.2d 422, *cert. denied,* 400 U.S. 930, 91 S.Ct. 191, 27 L.Ed.2d 190 (1970). [*See also State v. O'Brien,* 704 P.2d 883 (Hawaii 1985).]

Idaho: *Miller v. Winstead,* 75 Idaho 262, 270 P.2d 1010 (1954) (held that under former law, defendant had right to jury trial de novo on appeal from municipal court judgment); Idaho Code §§ 19–1901, 19–1902. [*See also* Idaho Code §§ 18–8004, 18–8005.]

Montana: Mont.Rev.Codes Ann. §§ 46–16–102, 46–17–201, 46–17–403.

Oregon: *Brown v. Multnomah Cty. Dist. Ct.,* 280 Or. 95, 570 P.2d 52 (1977). [*See also* Or. Const. art. 1 § 11; Or.Rev.Stat. §§ 813.010, 813.020.]

Washington: *State v. Wicke,* 91 Wash.2d 638, 591 P.2d 452 (1979).

*Craner,* 652 F.2d at 27, n. 5.

All of the above states except Hawaii ground the right to trial by jury which would apply in DUI cases on either the state's constitution or statutes. The Hawaii Supreme Court, in *State v. O'Brien,* 704 P.2d 883 (Hawaii 1985), ruled that the United States Constitution affords a right to trial by jury in DUI cases. It is notable that Nevada is the only state in the Ninth Circuit that does not find any right to a jury trial in DUI cases.

deciding whether the petitioner has a constitutional right to a jury trial.

In 1983, NRS § 484.3792 was amended to provide that the offense of driving while intoxicated is punishable by payment of tuition for and attendance of an educational course on the abuse of alcohol and controlled substances, imprisonment for not less than two days nor more than six months in jail (or performance of forty-eight hours of work for the community), and a fine of not less than $200 nor more than $1,000.[3] 1983 Nev.Stat. 1068–1072. The Nevada legislation rendered a jail sentence a mandatory part of the penalty for commission of the offense of driving while intoxicated. The Nevada statute also provides:

> 3. No person convicted of violating the provisions of NRS 484.379 may be released on probation, and no sentence imposed for violating those provisions may be suspended. No prosecuting attorney may dismiss a charge of violating the provisions of NRS 484.379 in exchange for a plea of guilty or nolo contendere to a lesser charge or for any other reason unless he knows or it is obvious that the charge is not supported by probable cause or cannot be proved at the time of trial.

NRS § 484.3792. Such provisions are rare. So is the provision for mandatory imprisonment upon conviction. Even some of the most heinous crimes are not punishable by mandatory imprisonment without the possibility of release on probation. The requirement by the Nevada legislature that people convicted of driving while intoxicated face jail time is a clear indication that the offense is regarded as serious.

Further, under Nevada statutes, there are important collateral consequences of a conviction for driving while intoxicated. As was the case in *Craner*, 652 F.2d 23 (9th Cir.1981) the petitioner here faced loss of his driver's license as a collateral consequence of a conviction for driving while intoxicated. NRS § 484.384. Driving is nearly imperative to the ability of many people to earn a living. It is a privilege highly regarded by most people. This is especially true in Nevada, where great distances between population centers are common. The automatic license revocation that occurs pursuant to NRS § 484.384 is an indication that the Nevada legislature and, by representation, the people of Nevada regard driving while intoxicated as a serious offense. *See Craner*, 652 F.2d 23 (9th Cir.1981); *United States v. Woods*, 450 F.Supp. 1335 (D.Md.1978); *Brady v. Blair*, 427 F.Supp. 5 (S.D.Ohio 1976).

Another consequence of a conviction for driving while intoxicated in Nevada is that, if the offender is convicted again within seven years of the offense, the minimum penalty increases. The second-time offender would then face mandatory imprisonment of not less than ten days and a fine of not less than $500. NRS § 484.3792. Conviction of a third offense within seven years carries a penalty of imprisonment in the state prison for not less than one year nor more than six years and a fine of not less than $2,000 nor more than $5,000. NRS § 484.3792. This system of increasing penalties sets the offense of driving while intoxicated apart from most offenses. This collateral consequence of conviction is one that did not exist in the *Craner* case. It is another indication that the legislature views driving while intoxicated as a serious offense.

Finally, this Court does not hesitate in classifying as *malum in se* the actions of one who after consuming alcohol endangers the lives of countless people by getting behind a wheel and driving at the high speeds and in the crowded conditions common on today's roads.

In recent years, society, generally, has shown great concern for the problem of intoxicated drivers on the roads. Citizens have organized groups to increase public awareness of the problem and to lobby for more severe penalties. The names of people convicted of driving under the influence of alcohol are published regularly in news-

---

**3.** For the one exception to this sentencing scheme *see* footnote 1, *supra.*

papers. *See e.g.*, Reno Gazette-Journal, September 6, 1986, at 3D; Reno Gazette-Journal, September 21, 1986, at 5D; Reno Gazette-Journal, September 22, 1986, at 2C.

█ In view of the automatic license revocation and mandatory jail sentence that accompany a conviction for driving while intoxicated, in view of the system of increasing minimum punishments for subsequent offenses, and in view of the opprobrious nature of the offense, it is apparent that driving while intoxicated is an offense regarded as serious by the people of the State of Nevada. It is an offense serious enough to require a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution.

In *State v. Smith*, 99 Nev. 806, 672 P.2d 631 (1983), the Nevada Supreme Court held that a defendant charged with driving while intoxicated under NRS § 484.379 was not guaranteed a jury trial by the United States Constitution. The Nevada Supreme Court had before it the penalties for driving while intoxicated as they stood prior to the 1983 amendments. *See* 1983 Nev.Stat. 1068–1072. The penalty for a first offense at that time did not include a mandatory jail sentence; nor did it include automatic driver's license revocation. 1983 Nev.Stat. 1068–1070. The penalty for a first offense prior to 1983 was tuition for and attendance of a course on the abuse of alcohol and controlled substances, a fine of not less than $100 nor more than $1,000, and/or imprisonment for not more than six months. *Id.* Only the course and the fine were mandatory. *Id.* In *Smith*, the Nevada Supreme Court was looking at a statute

different from the one this Court has before it.

Even though it was looking at a statute mandating lighter punishments than does NRS § 484.3792 the court in *Smith* had difficulty with the law already established by the Ninth Circuit Court of Appeals in the cases of *United States v. Hamdan*, 552 F.2d 276 (9th Cir.1977)[4] and *United States v. Craner*, 652 F.2d 23 (9th Cir.1981). *Smith*, 99 Nev. at 810, 672 P.2d at 634 ("With all respect to the court, we decline to follow the Ninth Circuit's holding." *Smith*, 99 Nev. at 810, 672 P.2d at 634).

Moreover, in determining whether or not the offense was serious for purposes of the right to a jury trial, the court in *Smith* looked only to the maximum imprisonment authorized as a penalty for driving while intoxicated. *Smith*, 99 Nev. at 809–810, 672 P.2d at 633–634. The court's analysis was too restricted.

Driving while intoxicated is a deadly crime. The people of the State of Nevada, through their legislature and in other ways, have clearly evinced a feeling that driving while intoxicated is a serious crime. Under the Fourteenth Amendment the State of Nevada cannot deny people charged with driving while intoxicated the right to a jury trial.

This Court is aware of the expense involved in providing jury trials for defendants charged with driving while intoxicated. This Court is also aware that prosecutions for driving while intoxicated now occur in Nevada's municipal courts, courts which by statute cannot accommodate jury trials. *See* NRS § 266.550. These are dif-

4. In *United States v. Hamdan*, 552 F.2d 276 (9th Cir.1977) the Ninth Circuit Court of Appeals held that a defendant charged with an offense punishable by imprisonment of not more than six months, a fine of not more than $1,000, or both, was entitled to a jury trial. The offense in *Hamdan* was the making of false statements in documents filed with the Immigration and Naturalization Service. *See* 8 U.S.C. § 1306(c). The court determined that the offense was serious by looking to 18 U.S.C. § 1(3) which then classified as petty an offense punishable by imprisonment of up to six months and fine of up to $500. 98 Stat. 3138. In October, 1984, 18

U.S.C. § 1(3) was amended to put the monetary line between petty and serious at a fine of $5,000. *Id.* Thus, while *Hamdan* supports this court's holding, the weight of that case's authority is unclear because of the amendment of 18 U.S.C. § 1(3). It is unnecessary to rely on *Hamdan* in this case. An analysis of all relevant factors indicates that driving while intoxicated is a serious offense in Nevada. Fine distinctions concerning the amount of the maximum authorized fine are not of great help in determining the seriousness with which society views an offense.

ficult problems. However, they are not reasons to deny jury trials in cases in which the Constitution guarantees them.

THE COURT, THEREFORE, FINDS that the petitioner's misdemeanor conviction for driving while intoxicated is unconstitutional and invalid.

IT IS, THEREFORE, HEREBY ORDERED that a writ of habeas corpus is GRANTED to petitioner, and petitioner is hereby relieved from all further consequences of the said conviction. The Clerk of the Court shall enter judgment in accordance with this order.

### ON MOTION TO ALTER OR AMEND JUDGMENT

On March 11, 1986, Brent R. Bronson petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleged that he had been denied his constitutional right to a jury trial. On April 29, 1986, respondents filed an answer. On September 29, 1986, this Court issued a Memorandum Decision and Order granting a writ of habeas corpus. The Court held that petitioner was denied his Sixth Amendment right to a jury trial and that, therefore, his misdemeanor conviction for driving while intoxicated was unconstitutional and invalid. Judgment was entered October 1, 1986.

On October 10, 1986, respondents filed a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e). In that motion, respondents request that the Court reconsider whether petitioner has exhausted his state court remedies and whether driving while intoxicated constitutes a "serious" offense for the purpose of Sixth Amendment analysis. Respondents also filed a motion pursuant to Fed.R.Civ.P. 62(b) and (c) requesting that the Court stay this action pending determination of the motion to amend the judgment and, if necessary, pending appeal.

Petitioner filed an opposition to the respondents' motions. The respondents replied.

## I

Federal habeas corpus petitioners are required to exhaust available state remedies. 28 U.S.C. § 2254(b). The requirement is a matter of comity, designed to afford state courts the first opportunity to remedy a constitutional violation. *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir.1981). The exhaustion requirement is not a matter of jurisdiction. *Id.*

"If a petitioner presents his claim to the highest state court and that court disposes of the claim on the merits, the exhaustion requirement has been satisfied." *Hayes v. Kincheloe*, 784 F.2d 1434, 1437 (9th Cir. 1986). A petitioner may also satisfy the exhaustion requirement "by showing that at the time the petitioner files the habeas petition in federal court no state remedies are still available to the petitioner and the petitioner had not deliberately by-passed the state remedies." *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982), *cert. denied*, 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983).

Petitioner has not exhausted his state remedies. He appealed to the Nevada Supreme Court, but that court did not address the merits of petitioner's claim and dismissed the appeal for lack of jurisdiction. *See Bronson v. State of Nevada*, Nevada Supreme Court, No. 16797, Order Dismissing Appeal (filed January 28, 1986) (attached as an exhibit to the Petition for a Writ of Habeas Corpus, document # 1). Further, other state remedies are presently available. *See* NRS §§ 34.150–34.310 (mandamus); *see also* NRS § 34.720–34.830 (habeas corpus).

However, another aspect of the exhaustion requirement is that "a petitioner may be excused from exhausting state remedies if the highest state court has recently addressed the issue raised in the petition and resolved it adversely to the petitioner, in the absence of intervening United States Supreme Court decisions on point or any other indication that the state court intends to depart from its prior decisions." *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir.1981). This "promotes comity by requiring ex-

haustion where resort to state courts would serve a useful function but excusing compliance where the doctrine would only create an unnecessary impediment to the prompt determination of individuals' rights." *Id.*

The respondents did not, prior to the present motion, contest the petitioner's exhaustion of state remedies. In fact, in their Answer to Petition for Writ of Habeas Corpus (document # 4, filed April 29, 1986) at pages 3–4, the respondents stated, "It is clear from the record that petitioner has exhausted his state court remedies with regard to his claim that he was constitutionally entitled to a jury trial."

The respondents assert in the Points and Authorities supporting their Motion to Alter or Amend Judgment that their delay in raising the exhaustion issue was caused by their earlier determination that the petitioner was excused from exhausting his state remedies. That earlier determination was made by respondents "based upon the fact that the Nevada Supreme Court had recently addressed the issue raised, resolved it adversely to the petitioner and therefore resort to that court would be futile." Points and Authorities supporting the Motion to Alter or Amend Judgment, page 4 (document # 8, filed October 10, 1986). The respondents cite *State v. Smith,* 99 Nev. 806, 672 P.2d 631 (1983) as the case which earlier convinced them that appeal to the Nevada Supreme Court by the petitioner would be futile.

In *State v. Smith, supra,* the Nevada Supreme Court held that neither Article 1, Section 3 of the Nevada Constitution, nor the Sixth Amendment to the United States Constitution guarantees the right to trial by jury for a first offense of driving while intoxicated.

In *State v. Smith,* the Nevada Supreme Court elected not to follow the Ninth Circuit Court of Appeals' holdings in *United States v. Hamdan,* 552 F.2d 276 (9th Cir. 1977) and *United States v. Craner,* 652 F.2d 23 (9th Cir.1981). The court in *Smith* elected to look only to one indicator of whether an offense is serious or petty for the purpose of Sixth Amendment analysis: the maximum possible imprisonment that can result from a conviction for the offense. The court said "where the maximum possible penalty is six months imprisonment or less, the offense is 'petty' and the right to trial by jury does not attach." *State v. Smith,* 99 Nev. at 810, 672 P.2d at 634. The court's analysis was too restricted. There has been neither a United States Supreme Court case on point nor any other indication that the Nevada Supreme Court intends to depart from the analysis it applied in *State v. Smith.*

The court in *Smith* dealt with the penalties for driving while intoxicated as they stood prior to the 1983 amendments. *See* 1983 Nev.Stat. 1068–1072. Prior to the 1983 amendments, the penalty for driving while intoxicated was lighter than it is today in that imprisonment was not mandatory and license revocation was not automatic. Apparently, respondents realized this only recently and now argue that this means that appeal to the Nevada Supreme Court by the petitioner would not be futile.

■ The maximum possible imprisonment for driving while intoxicated prior to the 1983 amendments was six months. That is the maximum possible imprisonment after the amendments as well. In view of the Nevada Supreme Court's clear declaration that only the maximum authorized imprisonment is relevant in Sixth Amendment analysis of offenses, and in view of the lack of indication that the Nevada Supreme Court intends to change its analysis, it is plain that appeal by petitioner to that court would be futile. Respondents' initial determination was correct.

## II

The respondents also ask the Court to alter or amend the October 1, 1986, judgment on the basis that driving while intoxicated is a serious rather than a petty offense.

The respondents have provided the Court with no argument which is relevant to that determination and which was not con-

sidered by the Court in granting the writ of habeas corpus. Thus, the Court will not alter or amend its judgment on this basis.

### III

Finally, the respondents ask the Court to stay this action pending determination of the motion to amend the judgment and, if necessary, pending appeal.

The factors considered in evaluating a request for a stay are similar to those considered in determining whether to grant a preliminary injunction. *Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017, 1018 n. 3 (9th Cir.1980). The moving party has the burden of demonstrating (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury if relief is not granted, (3) a balance of hardship favoring the moving party, and (4) advancement of the public interest. *Sierra Club v. Hathaway,* 579 F.2d 1162, 1167 (9th Cir.1978); *Munoz v. County of Imperial,* 604 F.2d 1174, 1175–1176 (9th Cir.1979).

As discussed *supra,* and in the Court's Memorandum Decision and Order of September 29, 1986, there is little likelihood that respondents will succeed on the merits. Furthermore, the balance of hardships is clearly tilted toward petitioner who has been denied the right to a jury trial. The hardship that the state faces here is one necessary to allow citizens a right guaranteed by the United States Constitution.

IT IS, THEREFORE, HEREBY ORDERED that respondents' Motion to Alter or Amend Judgment is DENIED.

IT IS FURTHER ORDERED that respondents' Motion for Stay is DENIED.