MELVIN R. BLANTON, Appellant, *v.* THE NORTH LAS VEGAS MUNICIPAL COURT, NORTH LAS VEGAS, NEVADA, AND THE HONORABLE GARY DAVIS, MUNICIPAL JUDGE THEREOF, Respondents.

No. 17940

JEANETTE HILTON, Appellant, *v.* THE CITY OF LAS VEGAS, COUNTY OF CLARK, STATE OF NEVADA, Respondent.

No. 17976

SAMUEL RAY FLANAGAN, Appellant, *v.* THE HONORABLE A. LORING PRIMEAUX, MUNICIPAL COURT JUDGE, IN AND FOR THE CITY OF LAS VEGAS, Respondent.

No. 17997

---

624

PATRICIA ANN COLLIE, Appellant, v. THE HONOR-
ABLE A. LORING PRIMEAUX, MUNICIPAL COURT
JUDGE, IN AND FOR THE CITY OF LAS VEGAS,
Respondent.

No. 17998

VINCENT H. WOODS, Appellant, v. THE HONORABLE
A. LORING PRIMEAUX, MUNICIPAL COURT
JUDGE, IN AND FOR THE CITY OF LAS VEGAS,
Respondent.

No. 17999

JAMES ARCADE, Appellant, v. THE HONORABLE
STEPHEN C. WEBSTER, MUNICIPAL COURT
JUDGE, IN AND FOR THE CITY OF LAS VEGAS,
Respondent.

No. 18000

CITY OF LAS VEGAS, NEVADA, AND A. LORING PRI-
MEAUX, JUDGE OF THE LAS VEGAS MUNICIPAL
COURT, Appellants, v. JOSEPH M. FEELY, Respond-
ent.

No. 18032

CITY OF NORTH LAS VEGAS, NEVADA, Petitioner, v.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE
STATE OF NEVADA, IN AND FOR THE COUNTY OF
CLARK, AND THE HONORABLE ADDELIAR D.
GUY, DISTRICT JUDGE, Respondents. MARK D.
FRALEY, Real Party in Interest.

No. 18065

CITY OF LAS VEGAS, NEVADA, AND STEPHEN WEB-
STER, JUDGE OF THE MUNICIPAL COURT, Appel-
lants, v. JAMES P. CUNNINGHAM, SR.,
Respondent.

No. 18073

ANTHONY L. WILEY, Petitioner, v. THE EIGHTH
JUDICIAL DISTRICT COURT OF THE STATE OF
NEVADA, IN AND FOR THE COUNTY OF CLARK,
AND THE HONORABLE STEPHEN L. HUFFAKER,
DISTRICT JUDGE, Respondents. CITY OF LAS
VEGAS, LAS VEGAS MUNICIPAL COURT OF THE
CITY OF LAS VEGAS, THE HONORABLE A.
LORING PRIMEAUX, JUDGE, Real Party in Inter-
est.

No. 18092

TIMOTHY JOHN CAHALIN, Appellant, *v.* THE HONORABLE STEPHEN WEBSTER, MUNICIPAL COURT JUDGE, IN AND FOR THE CITY OF LAS VEGAS, Respondent.

No. 18140

December 31, 1987                                          748 P.2d 494

*Graves, Leavitt & Koch,* and *John G. Watkins,* Las Vegas, for Appellant Melvin R. Blanton.

*Morgan D. Harris,* Public Defender, *Craig B. Davis,* Deputy Public Defender, Clark County, for Appellants Jeanette Hilton, Samuel Ray Flanagan, Patricia Ann Collie, Vincent H. Woods, James Arcade and Timothy John Cahalin, and Petitioner Anthony L. Wiley.

*George F. Ogilvie,* City Attorney, and *Nancy A. Becker,* Deputy City Attorney, Las Vegas, for Appellants City of Las Vegas, Hon. Stephen C. Webster and Hon. A. Loring Primeaux.

*Roy A. Woofter,* City Attorney, and *Mark L. Zalaoras,* Deputy City Attorney, North Las Vegas, for Petitioner City of North Las Vegas.

*George F. Ogilvie,* City Attorney, *Nancy A. Becker,* Deputy City Attorney, and *Lawrence M. Moore,* Deputy City Attorney, Las Vegas, for Respondents City of Las Vegas, Hon. Stephen C. Webster and Hon. A. Loring Primeaux.

*Roy A. Woofter,* City Attorney, and *Mark L. Zalaoras,* Deputy City Attorney, North Las Vegas, for Respondents City of North Las Vegas and Hon. Gary J. Davis.

*Morgan D. Harris,* Public Defender, and *Craig B. Davis,* Deputy Public Defender, Clark County, for Respondents Joseph M. Feely and James P. Cunningham, Sr.

*John G. Watkins,* Las Vegas, for Real Party in Interest Mark D. Fraley.

*Hon. Brian McKay,* Attorney General, and *James L. Rankl,* Deputy Attorney General, Carson City, for State of Nevada, Amicus Curiae.

## OPINION

By the Court, GUNDERSON, C. J.:

This court consolidated the instant appeals and petitions to consider two questions. First, is NRS 266.550, which precludes jury trials in municipal courts, constitutional?[1] Second, does either the United States Constitution or the Nevada State Constitution mandate that persons charged in the municipal courts with driving under the influence of alcohol, a misdemeanor, receive jury trials?

---

[1]NRS 266.550 states:

> The municipal court shall have such powers and jurisdiction in the city as are now provided by law for justices' courts, wherein any person or persons are charged with the breach or violation of the provisions of any ordinance of such city or of this chapter, of a police or municipal nature; but the trial and proceedings in such cases shall be summary and without a jury.

Appellants Melvin R. Blanton, Jeanette Hilton, Samuel Ray Flanagan, Patricia Ann Collie, Vincent H. Woods, James Arcade and Timothy John Cahalin were charged in the municipal court with driving under the influence of alcohol (DUI), a misdemeanor.[2] *See* NRS 484.379 and 484.3792(1)(a) and (b). Each of these individuals filed a pretrial petition for a writ of mandamus in the Eighth Judicial District Court challenging the denial by the municipal court of his or her individual demand for a jury trial. The district court denied each petition, and these appeals followed.

Respondents Joseph M. Feely and James P. Cunningham, Sr., were also charged in the municipal court with misdemeanor DUI. Each of these individuals successfully prosecuted a pretrial petition for a writ of mandamus challenging the denial by the municipal court of his demand for a jury trial. The district court declared NRS 266.550 unconstitutional in those cases, and directed that jury trials be set for Cunningham and Feely. The City of Las Vegas appeals from those orders.

Real party in interest Mark D. Fraley was convicted in the municipal court of misdemeanor DUI. Fraley appealed the conviction to the Eighth Judicial District Court; that court declared NRS 266.550 unconstitutional and remanded the case for a jury trial. The City of North Las Vegas subsequently filed in this court an original petition for a writ of certiorari challenging the district court's decision.

Petitioner Anthony L. Wiley was charged in the municipal court with misdemeanor DUI. Wiley filed in the Eighth Judicial District Court a petition for a writ of habeas corpus, challenging the denial by the municipal court of his demand for a jury trial. The district court denied relief on procedural grounds and Wiley's original petition in this court for a writ of prohibition followed.

### Statutory Grounds for Right to Jury Trial

NRS 266.550 provides municipal courts with the power and jurisdiction of justices' courts, except that the statute precludes municipal courts from conducting jury trials. Until 1985, each of the thirteen incorporated municipalities of this state had a provision in its charter applying NRS chapter 266 to its municipal courts.[3] In 1985, as part of a legislative removal of certain

---

[2]The amended complaint filed in the municipal court against appellant Woods charges Woods with driving under the influence of both alcohol and a controlled substance.

[3]*See, e.g.,* North Las Vegas City Charter, § 4.010 at 533 (1979) ("There shall be a municipal court of the city to which the provisions of chapter . . . 266 of NRS, relating to municipal courts, as amended from time to time, shall apply").

duplicative statutes, the legislature repealed those provisions from the charters of the thirteen cities.[4] The application of NRS chapter 266 to the municipal courts of these cities is now governed by NRS 266.005, which states:

> The provisions of this chapter shall not be applicable to incorporated cities in the State of Nevada organized and existing under the provisions of any special legislative act or special charter enacted or granted pursuant to the provisions of section 1 of article VIII of the constitution of the State of Nevada.

Las Vegas and North Las Vegas, whose municipal courts are the subject of the instant dispute, are incorporated cities existing under the provisions of special legislative acts. *See* 1983 Nev. Stat. Ch. 517 at 1391-1437; 1971 Nev. Stat. Ch. 573 at 1210-1229. Consequently, the statutory prohibition against the holding of jury trials in the municipal courts, *see* NRS 266.550, does not apply to the cases presently before this court.[5] We therefore need not reach the question in the instant cases of whether NRS 266.550 is constitutional. Accordingly, we turn to the Nevada State and United States Constitutions to determine whether individuals charged with misdemeanor DUI offenses in the municipal courts of this state have a constitutional right to a jury trial.

### Constitutional Grounds for Trial by Jury

The various appellants, respondents and petitioners claim that their right to jury trials in the municipal courts is guaranteed by the United States and Nevada State Constitutions. Article I, section 3 of the Nevada Constitution, and the sixth amendment to the United States Constitution, guarantee individuals a right to a jury trial.[6] Nevada's constitutional provision has been construed as confirming and securing the right to a jury trial as it was understood at common law. State v. Ruhe, 24 Nev. 251, 262, 52 P. 274, 277 (1898). Thus, the right to a trial by jury under the

---

[4]1985 Nev. Stats. ch. 208, §§ 12, 14, 16, and 19(2)-(12), at 674-677. NRS chapter 5, which applies to all municipal courts in the state, does not contain a provision analogous to NRS 266.550.

[5]The other cities with special charters are Boulder City, Caliente, Carlin, Carson City, Elko, Gabbs, Henderson, Reno, Sparks, Wells and Yerington.

Only four cities incorporated under chapter 266 of the NRS (Ely, Fallon, Lovelock and Winnemucca) are still statutorily authorized to deny requests for jury trials pursuant to NRS 266.550.

[6]U.S. Const. amend. VI: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ."

Nev. Const. art. I, § 3: "The right of trial by Jury shall be secured to all and remain inviolate forever. . . ."

Nevada Constitution is coextensive with that guaranteed by the federal constitution.

It is well settled that the sixth amendment right of trial by jury does not extend to every criminal proceeding. District of Columbia v. Clawans, 300 U.S. 617, 624 (1937). Almost one hundred years ago, the United States Supreme Court stated that a jury trial is not required "in that class or grade of offences called petty offences, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose. . . ." Callen v. Wilson, 127 U.S. 540, 557 (1888). Since the decision in *Callen,* the Supreme Court has grappled with the problem of drawing a line between those criminal cases requiring a jury trial, and those not included in the protections of the sixth amendment. For example, in District of Columbia v. Colts, 282 U.S. 63 (1930), the Court considered the offense of reckless driving at an excessive speed, for which the maximum punishment for a first offender was a $100 fine and 30 days in jail. Although the penalty was not severe, the Court thought the offense too serious to be regarded as "petty." *Id.* at 73. Later, in District of Columbia v. Clawans, 300 U.S. 617 (1937), the court concluded that the offense of peddling without a license, which carried a maximum penalty of a $300 fine or 90 days in jail, was a "petty" offense. In reaching that conclusion the Court noted that the offense was not a crime at common law, and that the offense was "relatively inoffensive." *Id.* at 625. The Court added, however, "the severity of the penalty [is] an element to be considered." *Id.* The Court concluded that 90 days was not so severe a maximum penalty as to take the offense out of the category of "petty." *Id.* at 627.

In more recent cases, the Supreme Court has sought a more definite and workable standard by which to decide the question of the scope of the right to trial by jury. Consequently, the Supreme Court has increasingly relied on the severity of the maximum possible sentence rather than relying on other criteria. The search for an objective criterion can be found in Cheff v. Schnackenberg, 384 U.S. 373 (1966), where the court concluded that crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses. The evolution continued in Duncan v. Louisiana, 391 U.S. 145 (1968), where the Supreme Court more clearly emphasized the maximum authorized penalty over other criteria in determining whether the crime is so serious as to require a jury trial. *Id.* at 159. In *Duncan,* the Supreme Court stated that "the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment." *Id.* The Court stated that although "it is necessary to draw

a line . . . separating petty from serious infractions," *id.* at 160-61, under the facts of the case, it was "sufficient . . . to hold that a crime punishable by two years in prison is . . . not a petty offense." *Id.* at 161-62. In Frank v. United States, 395 U.S. 147 (1969), the Court reiterated the importance of the severity of the maximum sentence and disregarded the possibility of an extended period of probation as a criterion for concluding that an offense was serious. The Supreme Court concluded that, of the indicators capable of objective assessment, the most important is the severity of the possible sentence.

Finally, in Baldwin v. New York, 399 U.S. 66 (1970), the Supreme Court established the maximum penalty as the only objective criterion. Relying on *Frank, Duncan* and *Clawans,* the Court examined the existing laws and practice throughout the nation and concluded:

> This near-uniform judgment of the Nation furnishes us with the *only objective criterion* by which a line could ever be drawn—on the basis of the possible penalty alone—between offenses that are and that are not regarded as "serious" for purposes of trial by jury.

399 U.S. at 72-73 (footnote omitted) (emphasis added). The court went on to draw a line between serious and petty offenses:

> One who is threatened with the possibility of imprisonment for six months may find little difference between the potential consequences that face him, and the consequences that faced appellant here. Indeed, the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation. Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications.

*Id.* at 73. It thus appears that the Supreme Court has retreated from the position enunciated in District of Columbia v. Colts, *supra,* that the nature of the offense is of primary importance, and has instead adopted a more workable objective test based on the severity of the maximum possible penalty alone.

In State v. Smith, 99 Nev. 806, 672 P.2d 631 (1983), this court relied solely upon the objective criterion of the maximum possible penalty in its characterization of driving under the influence of alcohol as a petty offense. Respondent Smith was charged with DUI in the justice's court. The justice's court denied Smith's demand for a trial by jury, and Smith sought a writ of mandamus

in the district court. The district court granted extraordinary relief, and ordered the justice's court to grant Smith a jury trial. This court reversed, and concluded that a jury trial is not constitutionally mandated:

> Accordingly, we look to the criterion expressly established by the United States Supreme Court: where the maximum possible penalty is six months imprisonment or less, the offense is "petty" and the right to trial by jury does not attach. As NRS 484.379 provides a penalty of up to six months imprisonment for a first-time DUI offense, there is no constitutional right to a trial by jury.

99 Nev. at 810, 672 P.2d at 634.

At the time of the alleged offense in *Smith,* the maximum punishment for a first-time DUI conviction in Nevada was six months imprisonment or a fine of up to $1,000.00. *Id. See* 1983 Nev. Stats. ch. 426, §§ 8, 9 and 10, at 1068-1071. In 1983, the legislature increased the minimum penalties for misdemeanor DUI offenses. For example, the legislature increased the minimum fine for a first offense from $100 to $200 and mandated a minimum mandatory jail sentence of two days.[7] The maximum penalties, however, remain unchanged.

Although this court held in *Smith* that defendants charged in Nevada with misdemeanor DUI offenses have no right to a jury

---

[7]Specifically, the legislature increased the period within which a prior offense could be used to enhance a subsequent offense from five years to seven years. The minimum fine for the first offense increased from $100 to $200, in addition to the tuition fee for an alcohol education course the defendant must pay. The maximum fine remains $1000. The legislature imposed a minimum, mandatory term of imprisonment of not less than 2 days or the performance of 48 hours of community service while dressed in distinctive garb. 1983 Nev. Stats. ch. 426, § 10 at 1070. Additionally, suspension of the first offender's driver's license is no longer within the sentencing court's discretion. NRS 483.460(1)(c) now provides for mandatory revocation of the offender's driver's license by the Department of Motor Vehicles for a period of ninety days. *See* 1983 Nev. Stats. ch. 426, § 22 at 1081. After forty-five days a restricted license may be available. NRS 483.490(2).

Although the 1983 legislature did not increase the second-offender's jail time or fine ("not less than 10 days nor more than 6 months in jail . . . not less than $500 nor more than $1,000," *see* NRS 484.3792(1)(b)), it increased the period of the second offender's driver's license revocation from six months to one year. 1983 Nev. Stats. ch. 426 §§ 22-23 at 1081-82. *See* NRS 483.490(2); 483.460(1)(b)(5) (no restricted license is available).

Neither offense is subject to plea bargaining or probation. NRS 484.3792(3). First and second offenders who elect to undergo at least one year of drug or alcohol counseling may receive reduced sentences. *See* NRS 484.3794.

Since 1983, these statutory provisions have not been amended in any material respect.

trial, a recent decision of the federal district court for the district of Nevada reached the opposite conclusion. *See* Bronson v. Swinney, 648 F.Supp. 1094 (D.Nev. 1986). In *Bronson,* the defendant was convicted of first offense DUI following a bench trial in the justice's court. After pursuing his appeal to the state district court, the defendant petitioned the federal district court for a writ of habeas corpus, asserting that he had been denied his constitutional right to a jury trial. The federal district court examined the 1983 amendments to Nevada's DUI statutes and enumerated the many collateral consequences that convictions for DUI entail, such as mandatory revocation of the driving privilege, increased penalties for subsequent offenses, and the publication in local newspapers of the names of those offenders. Although the federal district court acknowledged that "[t]he most important criterion in determining the seriousness with which society regards an offense is the maximum authorized penalty," 648 F.Supp. at 1097, the district court looked primarily to decisions of two three-judge panels of the Ninth Circuit Court of Appeals, one a split decision, which held that factors other than the maximum authorized penalty are relevant in determining whether an offense is serious or petty. Specifically, the court relied on United States v. Craner, 652 F.2d 23 (9th Cir. 1981), in which a three-judge panel examined the collateral consequences of a federal DUI conviction in concluding that DUI is a serious offense. The court also relied on United States v. Sanchez-Meza, 547 F.2d 461 (9th Cir. 1976), in which a panel, in a split decision, concluded that misdemeanor conspiracy is a serious offense, reasoning that the crime was indictable at common law, was itself morally offensive, and was malum in se.[8] The federal district court then concluded that "the nature of the offense, the collateral consequences of a conviction . . . and the fact that the penalty . . . includes mandatory imprisonment are factors that reflect the seriousness with which society regards the offense of driving while intoxicated." 648 F.Supp at 1098. Applying this analysis, the federal district court reasoned:

> In view of the automatic license revocation and mandatory jail sentence that accompany a conviction for driving while intoxicated, in view of the system of increasing minimum punishments for subsequent offenses, and in view of the

---

[8]In contrast, the dissent in *Sanchez-Meza,* citing Baldwin v. New York, 399 U.S. 66 (1970), noted that the "Supreme Court recently has been focusing on the length of the potential sentence to determine whether an offense is petty." 547 F.2d at 465. Consequently, the dissent concluded that because the defendant was subject to a maximum penalty of only six months imprisonment, under the "most relevant" criterion announced by the Supreme Court, the offense, as a misdemeanor, was petty with no entitlement to a jury. *Id.*

opprobrious nature of the offense, it is apparent that driving while intoxicated is an offense regarded as serious by the people of the State of Nevada. It is an offense serious enough to require a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution.

648 F.Supp. at 1100. The federal court distinguished our holding in *Smith,* noting that in *Smith* this court considered the DUI penalties in effect in Nevada prior to the legislature's 1983 amendments. *Id.* Further, the federal court criticized the analysis in *Smith* as "too restricted," because in determining whether or not the offense was serious, this court "looked only to the maximum imprisonment authorized." *Id.* The federal district court concluded that "[t]he people of the State of Nevada, through their legislature and in other ways, have clearly evinced a feeling that driving while intoxicated is a serious crime." *Id.*

In the present case, the proponents of the position that DUI is a "serious" offense requiring a jury trial argue that this court should adopt the reasoning of *Bronson* and overturn *Smith.* We disagree.

We note initially that the decisions of the federal district court and panels of the federal circuit court of appeal are not binding upon this court. United States *ex rel.* Lawrence v. Woods, 432 F.2d 1072, 1075-76 (7th Cir. 1970), *cert. denied,* 402 U.S. 983 (1971). Even an *en banc* decision of a federal circuit court would not bind Nevada to restructure the court system of this state. Our state constitution binds the courts of the State of Nevada to the United States Constitution as interpreted by the United States Supreme Court. Nev. Const. art. I, § 2. *See* Bargas v. Warden, 87 Nev. 30, 482 P.2d 317, *cert. denied,* 403 U.S. 935 (1971). Further, we have respectfully concluded that *Bronson,* and the decisions of the 9th Circuit panels upon which the federal district court relied, represent an unnecessary and unwarranted expansion of the Supreme Court's holding in *Baldwin.*

As demonstrated above, the collateral consequences of a conviction have not been a criterion relied upon in the recent decisions of the United States Supreme Court. *See* Baldwin v. New York, 399 U.S. 66 (1970); Frank v. United States, 395 U.S. 147 (1969); Duncan v. Louisiana, 391 U.S. 145 (1968); *see also* Taylor v. Hayes, 418 U.S. 488 (1974); Codispoti v. Pennsylvania, 418 U.S. 506 (1974). Moreover, the Court's references to "line drawing" in *Duncan* and *Baldwin,* and its increasing reliance upon the maximum punishment as the sole criterion for characterizing offenses as "serious" or "petty," suggest that only the maximum punishment for an offense need be examined to

determine whether a jury trial is constitutionally mandated. Further, in *Baldwin,* the Supreme Court specifically drew a line of demarcation between "serious" and "petty" offenses; if the maximum authorized punishment is less than six months the offense is "petty." 399 U.S. at 73. The maximum term of imprisonment possible in Nevada for a misdemeanor DUI offense remains six months. The maximum possible fine remains $1000. Although the minimum penalties have been increased, the maximum penalties remain the same. We conclude, therefore, that the federal constitution does not require us to overturn our holding in *Smith* that, under the statutory penalties for DUI in Nevada, the United States Constitution does not guarantee the right to jury trials in misdemeanor DUI cases.

Several serious policy considerations reinforce our conclusion that we should not abandon our holding in *Smith.* First, a non-jury trial in a misdemeanor case is speedy and inexpensive. On the other hand, a decision of this court requiring jury trials in the prosecution of DUI offenses in the municipal court would result in tremendous expense to the municipalities of this state. For example, courtrooms would require renovation, and in some cases expansion or replacement, in order to accommodate jurors. The increased time required to conduct jury trials would in many instances occasion a need for municipalities to employ more judges and more personnel, and to build still further courtrooms. These expenses would be exacerbated because, in DUI cases, the prosecutor is prohibited by statute from engaging in plea bargaining. *See* NRS 484.3792(3). The resulting expense to the municipalities may actually deter the prosecution of DUI offenses. Thus, requiring jury trials in municipal courts for DUI cases could mandate a lack of action against those who drink and drive. "As a practical matter, the lower courts are not going to try [DUI] cases if a jail sentence is involved. It is difficult to justify a $500 to $1000 jury so that a defendant can spend [two days] in jail. Economics will prevail over justice." Brenner v. City of Casper, 723 P.2d 558, 563-64 (Wyo. 1986) (Brown, J., dissenting).

In addition to the expense imposed upon the municipalities, a jury trial is not a cost-free transaction to the jurors, their families and their employers, particularly in municipalities where jurors may be called into service for as long as a year at a time. These burdens will weigh heaviest upon the residents of the more rural areas, who may be forced to travel excessive distances for service and who may be forced to serve with disproportionate frequency due to the relatively few prospective jurors in these areas.

Nor are we persuaded that the current wave of public concern over the problem of intoxicated drivers somehow converts misdemeanor DUI into a "serious" offense under the federal constitu-

tion. While this court does not condone the commission of any crime, the offense of DUI is no more opprobrious than other crimes over which the municipal court has jurisdiction, such as indecent conduct or lewd behavior. *See* NRS 266.555(2). A decision giving individuals charged with DUI in the municipal courts the right to a jury trial could arguably then be extended to any offense currently the subject of a ground swell of public opinion.

Moreover, a decision of this court mandating jury trials in DUI cases would create numerous unresolved administrative problems. Procedures for the summons and selection of jurors in the municipal courts do not exist. A decision requiring jury trials in the municipal courts could not be implemented until such procedures were developed. This court is not in a position to legislate the procedures to be followed in such cases. Further, the legislature of this state, which meets once every two years, is not presently in session to fill the void. Also unresolved would be the issues of whether the proposed jury could be comprised of fewer than twelve jurors, and whether the verdict must be unanimous. *See* Parham v. Municipal Court, City of Sioux Falls, 199 N.W.2d 501, 508 (S.D. 1972) (Bielgelmeier, J., dissenting, *citing* "The Six-Man Jury," 17 S.D. Law Rev. 285). Presently, juries in criminal trials held in the district courts of the State of Nevada are comprised of twelve jurors, who must reach a unanimous verdict. If this court were to legislate a lower standard for municipal courts, we are not convinced that a jury, comprised of a minimum number of members or required to reach less than a unanimous verdict, would necessarily render a decision more reliable than that of a judge. If some higher standard is required, then this court would be fixing greater protections for violators of city ordinances than the United States Supreme Court requires states to provide in felony prosecutions.

Finally, we note that in Nevada's outlying communities, due to the demographic and economic realities of our rural areas, municipal courts have for the most part been staffed by non-lawyer judges. Some of these judicial posts are part-time positions. Attorneys are scarce and, historically, the few present have chosen to pursue other endeavors—with the result that the lower judicial posts have devolved upon intelligent and popular laypersons.

In our view, as it has developed, Nevada's court system has been successful. Our legislature has provided adequate funding for judicial education, and has mandated that all non-lawyer judges must attend The National Judicial College, located in Reno. *See* NRS 5.025; 5.026. In addition, at least twice yearly, our court conducts seminars on continuing legal education for

such judges. We also send a number of them out-of-state each year, for seminars of the American Academy of Judicial Education and the American Judges Association, and for other programs focused on the needs of non-lawyer judges. As a result, over time, Nevada has developed a cadre of lay municipal court judges who, in this court's opinion, are conscientious, well trained in the substantive law of the misdemeanor offenses that are within their jurisdiction, and competent to conduct non-jury trials relating to such offenses—including DUI matters. In short, we believe Nevada's system works, and works well.

Knowing our judges, however, we would be concerned about imposing upon all of our lay municipal court judges such novel and additional burdens as supervising voir dire examinations of jurors, ruling upon challenges for cause, safeguarding jurors against undue publicity, and formulating written jury instructions to govern the various offenses within their jurisdiction. The matter of jury instructions is particularly troubling. We think we can train, and have trained, our lay municipal court judges to understand the legal precepts necessary to manage the bench trials they conduct in DUI cases and other misdemeanor matters fairly. However, as highly as Nevada's lay judges are regarded by this court and by the communities they serve, we fear that the formulation of written jury instructions might require additional linguistic and legal skills, beyond the background of some very effective judges now serving in our smaller municipal courts. And, if imposing jury trials upon such courts ultimately necessitated a change to a system of all law-school-trained judges, we are not at all persuaded that the quality of justice in those courts would improve. Rather, the result might well be that some very competent lay judges, well respected and accepted by their constituents, would be replaced by persons who, though possessing law degrees and licenses, would not merely be strangers to the communities they would come to serve. They also might be something less than the better product of American law schools, and less than the persons they arrived in town to replace.

These significant issues relating to serious financial, administrative, and policy concerns should be resolved by the legislature, after it has conducted appropriate hearings and investigations regarding the implications of the various alternatives. "Judicial restraint is a worthwhile practice when the proposed new doctrine may have implications far beyond the perception of the court asked to declare it." Hamm v. Carson City Nugget, Inc., 85 Nev. 99, 101, 450 P.2d 358, 359 (1969). The position of the federal district court in *Bronson*, were it to be adopted by this court today, would have just such far reaching implications. Our extension of jury requirements to cases arising in the municipal court,

when the current decisions of the United States Supreme Court are contrary, would in our view impose upon the domain of the legislature. Moreover, if such a drastic change in the interpretation of the federal constitution is to be judicially mandated, such a decision must come from the United States Supreme Court. While we have great respect for the federal court that rendered the decision in *Bronson,* we are unwilling to impose upon the municipalities of this state the burden of conducting jury trials based solely upon that court's interpretation of the federal constitution, which we believe is at odds with the current decisions of the United States Supreme Court.

Other jurisdictions have similarly concluded that the federal constitution does not guarantee DUI defendants a right to jury trials in misdemeanor cases. Justiniano Matos v. Gaspar Rodriguez, 440 F.Supp. 673, 677 (D.P.R. 1976) ("the doctrine of *District of Columbia v. Colts, supra,* wherein primary importance was given to the nature of the offense, is no longer applicable"); Hilliard v. City of Gainesville, 213 So.2d 689, 691 (Fla. 1968) ("the maximum penalty which can be prescribed by [the] Florida municipal [DUI] ordinance is well below the "petty offense" maximum [of six months imprisonment] indicated by Cheff v. Schnackenberg, supra"); (State v. Young, 234 N.W.2d 196, 197 (Neb. 1975) (where the maximum penalty for second offense DUI is three months, there is no entitlement to a jury trial under the United States Constitution); Brenner v. City of Casper, 723 P.2d 558, 561 (Wyo. 1986) ("[w]hile recognizing the standard utilized by the United States Supreme Court, it is our conclusion that greater protection is afforded by the Wyoming Constitution"). Those states providing jury trials in misdemeanor DUI cases do so pursuant to express statutory provisions or their own state constitutions.[9] Only one state arguably has interpreted the federal constitution to require a jury trial in DUI cases where the maximum penalty does not exceed six months imprisonment. *See* State v. O'Brien, 704 P.2d 883 (Haw. 1985). As noted above, we believe the Supreme Court decisions interpreting the sixth amendment do not require such a conclusion.

---

[9]*See, e.g.,* Rothweiler v. Superior Court of Pima County, 410 P.2d 479 (Ariz. 1966) (charge of DUI deemed a "criminal prosecution" and therefore a right to jury trial exists under Arizona Constitution); Fisher v. State, 504 A.2d 626 (Md. 1986) (criminal defendant charged with offense for which the maximum penalty exceeds ninety days is entitled to a jury trial under Maryland Constitution); Brown v. Multnomah County Dist. Court, 570 P.2d 52 (Ore. 1977) (charge of DUI deemed a "criminal prosecution" for purposes of determining right to a jury trial under Oregon Constitution which guarantees jury trials in all "criminal prosecutions"); Brenner v. City of Casper, 723 P.2d 558 (Wyo. 1986) (crime punishable by jail term, regardless of length, was serious crime for which a jury trial is required under Wyoming Constitution).

In conclusion, absent an express pronouncement by the Supreme Court of the United States, judicial restraint dictates that this court, in resolving the constitutional question before us, decline to take guidance from the supreme courts of other states interpreting their own state statutes and state constitutions, or from the lower federal courts who have, in our view, extended the current decisions of the United States Supreme Court. Especially in view of the substantial ramifications such a holding would entail, we consider it inappropriate to look beyond the parameters currently defined by the United States Supreme Court and require jury trials in misdemeanor DUI cases.

We therefore affirm the district court orders denying the petitions for writs of mandamus in Docket Numbers 17940, 17976, 17997, 17998, 17999, 18000 and 18140. We reverse the district court orders granting petitions for writs of mandamus in Docket Numbers 18032 and 18073, and remand these matters for further proceedings consistent with this opinion. We grant the original petition for a writ of certiorari in Docket Number 18065, and instruct the clerk of this court to issue a writ of certiorari, forthwith, compelling the district court to vacate its order reversing Fraley's conviction and to enter a new order consistent with this decision. We deny the original petition for a writ of prohibition in Docket Number 18092.

STEFFEN, YOUNG, SPRINGER, and MOWBRAY, JJ., concur.