130 Nev., Advance Opinion 7

# IN THE SUPREME COURT OF THE STATE OF NEVADA

SERGIO AMEZCUA,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE ROB
BARE, DISTRICT JUDGE,
Respondents,
    and
THE STATE OF NEVADA,
Real Party in Interest.

No. 63724

**FILED**

FEB 13 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or habeas corpus challenging a district court order affirming a judgment of conviction and denial of a motion for new trial.

*Petition denied.*

The Pariente Law Firm, P.C., and Michael D. Pariente, Las Vegas,
for Petitioner.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County,
for Real Party in Interest.

BEFORE GIBBONS, C.J., and DOUGLAS and SAITTA, JJ.

*OPINION*

PER CURIAM:

The right to a jury trial under the Sixth Amendment to the United States Constitution depends on whether an offense is "petty" or "serious." In this original proceeding, we consider whether certain collateral consequences of a conviction for first-offense domestic battery, such as an evidentiary presumption in child custody and dependency actions, limitations on the right to possess a firearm, and possible deportation, make it a serious offense for which a defendant is entitled to a jury trial. We conclude that petitioner Sergio Amezcua has not demonstrated that first-offense domestic battery is a serious offense. He therefore was not entitled to a jury trial on the misdemeanor charge of domestic battery.

*FACTS AND PROCEDURAL HISTORY*

Amezcua was charged with first-offense battery constituting domestic violence in justice court. He filed a timely notice for jury trial pursuant to NRS 175.011(2). The justice court denied the motion. Amezcua subsequently filed a petition for a writ of mandamus in the district court, which was denied. He unsuccessfully challenged the district court's denial of that writ petition in a petition for a writ of mandamus or habeas corpus filed in this court. *See Amezcua v. Eighth Judicial Dist. Court*, Docket No. 59868 (Order Denying Petition, February 9, 2012). Thereafter, Amezcua was convicted of the charged offense in the justice court. On appeal, the district court affirmed the judgment of conviction. This petition for extraordinary relief followed.

 

## DISCUSSION

A writ of mandamus may issue to compel the performance of an act which the law requires "as a duty resulting from an office, trust or station," NRS 34.160, or to control an arbitrary or capricious exercise of discretion, *see Round Hill Gen. Improvement Dist. v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). The writ will not issue, however, if a petitioner has a plain, speedy, and adequate remedy in the ordinary course of the law. NRS 34.170. Here, Amezcua had a plain, speedy, and adequate remedy at law to address his claim. He appealed his conviction to the district court, which enjoys final appellate jurisdiction in cases arising from justice court, Nev. Const. art. 6, § 1, and raised the claim that the justice court erred in denying his request for a jury trial. He may not seek writ relief merely because he disagrees with the district court's determination. *See Hosier v. State*, 121 Nev. 409, 412, 117 P.3d 212, 213 (2005) (declining to exercise original jurisdiction over petition for extraordinary relief challenging the validity of a judgment of conviction); *State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005) (noting that the purpose of the writ is not to correct lower-court decisions that may be error). As a general rule, we will not entertain a writ petition that requests review of a district court decision when that court is acting in its appellate capacity unless the petitioner demonstrates that "the district court has improperly refused to exercise its jurisdiction, has exceeded its jurisdiction, or has exercised its discretion in an arbitrary or capricious manner." *State v. Eighth Judicial Dist. Court (Hedland)*, 116 Nev. 127, 134, 994 P.2d 692, 696 (2000). The petition filed in this case fits none of those exceptions. In similar circumstances we

nevertheless have exercised our constitutional prerogative to entertain a writ petition where the petition presented a significant issue of statewide concern that would otherwise escape our review. *Cf. id.* at 134, 994 P.2d at 697 (exercising discretion to entertain petition where lower courts had reached different conclusions on significant issues of statewide concern). This petition presents such a situation.[1]

The Sixth Amendment of the United States Constitution guarantees an individual the right to a jury trial.[2] U.S. Const. amend. VI; *see also Duncan v. Louisiana*, 391 U.S. 145, 149-50 (1968) (providing the Sixth Amendment right to a jury trial applies to the States through the Fourteenth Amendment). However, that right "does not extend to every criminal proceeding." *Blanton v. N. Las Vegas Mun. Court*, 103 Nev. 623, 629, 748 P.2d 494, 497 (1987), *aff'd sub nom. Blanton v. N. Las Vegas*, 489 U.S. 538 (1989). The critical distinction is between "petty" and "serious" offenses: the right to a jury trial attaches only to "serious" offenses. *Id.*

---

[1]To the extent that Amezcua seeks relief from this court in habeas corpus, we deny his petition as we will not exercise our original jurisdiction to consider a petition for a writ of habeas corpus challenging the validity of a judgment of conviction. *Hosier v. State*, 121 Nev. 409, 412, 117 P.3d 212, 213 (2005).

[2]The right to a jury trial is also guaranteed by Article 1, Section 3 of the Nevada Constitution. In the context of criminal proceedings, we have held that the right under the state constitution "is coextensive with that guaranteed by the federal constitution." *Blanton v. N. Las Vegas Mun. Court*, 103 Nev. 623, 628-29, 748 P.2d 494, 497 (1987), *aff'd sub nom. Blanton v. N. Las Vegas*, 489 U.S. 538 (1989).

"[T]o determine whether the . . . right to a jury trial attaches to a particular offense, the court must examine 'objective indications of the seriousness with which society regards the offense.'" *United States v. Nachtigal*, 507 U.S. 1, 3 (1993) (quoting *Blanton v. N. Las Vegas*, 489 U.S. 538, 541 (1989)). The best objective indicator of the seriousness with which society regards an offense is the maximum penalty that the legislature has set for it. *Id.* Although a "penalty" may include things other than imprisonment, the focus for purposes of the right to a jury trial has been "'on the maximum authorized period of incarceration.'" *Id.* (quoting *Blanton*, 489 U.S. at 542). Taking this approach, the Supreme Court has held that an offense for which the period of incarceration is six months or less is presumptively a "petty" offense and a jury trial is not constitutionally required. *Id.* We have reached the same conclusion. *Blanton*, 103 Nev. at 633-34, 748 P.2d at 500-01. The presumption may be overcome "only by showing that the additional penalties, viewed together with the maximum prison term, are so severe that the legislature clearly determined that the offense is a 'serious' one." *Nachtigal*, 507 U.S. at 3-4 (quoting *Blanton*, 489 U.S. at 543).

Under Nevada law, first-offense domestic battery is a misdemeanor that has a maximum term of imprisonment of six months. NRS 200.485(1)(a)(1). First-offense domestic battery therefore is presumptively a petty offense to which no jury-trial right attaches. Amezcua bears the burden of proving that additional penalties, when considered with the maximum term of imprisonment, are so severe that they clearly reflect a legislative determination that first-offense domestic battery is a "serious" offense. *Blanton*, 489 U.S. at 543.

Amezcua claims that various consequences of a conviction for domestic battery reflect a legislative determination that the offense is serious: (1) NRS 432B.157 and NRS 125C.230 create a rebuttable presumption that he, as a perpetrator of domestic violence, is unfit for sole or joint custody of his children; (2) he could lose the right to possess a firearm under 18 U.S.C. § 922(g)(9); and (3) a conviction would render a noncitizen deportable under federal immigration law.[3] Amezcua contends that his interest in raising his child and his right to bear arms are important fundamental rights that are significantly affected by his conviction, and therefore, this court should consider the conviction's impact on these rights in determining whether the offense is "serious." He asserts that these additional penalties are more severe than penalties that other courts have determined are enough to clearly demonstrate a legislative determination that an offense is serious, such as a 15-year driver's license revocation.

The additional penalties that Amezcua cites do not demonstrate a clear determination by the Nevada Legislature that first-offense domestic battery is a serious offense to which the jury-trial right attaches. The rebuttable presumptions set forth in NRS 432B.157 and NRS 125C.230 are concerned with the best interest of a child who is the subject of child protection or custody proceedings.[4] As such, they reflect

---

[3]Amezcua concedes that he is a United States citizen.

[4]We note that the presumptions in these statutes do not arise only when there has been a conviction. They require a finding after an evidentiary hearing that there is clear and convincing evidence that a
*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

6

only that concern for the best interest of the child rather than a clear legislative determination that first-offense domestic battery is a serious offense. And whether those rebuttable presumptions will ever be used against a defendant is speculative at best since they would arise only in separate civil proceedings. The fact that they are not conclusive or automatic indicates that they do not reflect a legislative determination sufficient to rebut the presumption that the offense is "petty" based on the maximum term of imprisonment. *See Foote v. United States*, 670 A.2d 366, 372 (D.C. 1996) ("*Blanton's* presumption that offenses carrying no more than six months incarceration are petty cannot, in our view, be effectively rebutted by reference to the potential remedies in hypothetical civil or administrative proceedings which have not been instituted . . . ."). The other two "penalties" that Amezcua mentions—restrictions on possession of a firearm and deportation—are collateral consequences of a conviction: they arise out of federal law, not the Nevada statute that proscribes first-offense domestic battery. *See Palmer v. State*, 118 Nev. 823, 826, 59 P.3d 1192, 1194 (2002) ("Direct consequences have an automatic and immediate effect on the nature or length of a defendant's punishment; collateral consequences do not."); *Nollette v. State*, 118 Nev. 341, 344, 46 P.3d 87, 89 (2002) ("Collateral consequences . . . do not affect

---

*...continued*
parent or other person seeking custody of a child engaged in one or more acts of domestic violence against the child, a parent of the child, or any other person residing with the child. Therefore, neither statute depends on a conviction.

the length or nature of the punishment and are generally dependent on either the court's discretion, the defendant's future conduct, or the discretion of a government agency."). Such collateral consequences of a conviction are not relevant because they do not reflect a determination by the Nevada Legislature that first-offense domestic battery is a serious offense. *See Blanton*, 103 Nev. at 633-34, 748 P.2d at 500-01; *see also Nachtigal*, 507 U.S. at 4 ("[W]e expressly stated [in *Blanton*] that the statutory penalties in other States are irrelevant to the question whether a particular legislature deemed a particular offense 'serious.'" (quoting *Blanton*, 489 U.S. at 545 n.11)); *Blanton*, 489 U.S. at 543 n.8 ("In performing this analysis, only penalties resulting from state action, *e.g.*, those mandated by statute or regulation, should be considered."). In this respect, Amezcua's analogy to the 15-year driver's license revocation in *Richter v. Fairbanks*, 903 F.2d 1202, 1205 (8th Cir. 1990), fails. Unlike the additional penalties identified by Amezcua, the driver's license revocation considered in *Richter* was included in the Nebraska DWI ordinance. *See id.* at 1203.

The only penalties that NRS 200.485(1) imposes, in addition to imprisonment, are a community-service requirement of not more than 120 hours and a fine of not more than $1,000. There is nothing so severe in those penalties, considered together, as to clearly indicate a determination by the Nevada Legislature that this is a serious offense to which the right to a jury trial attaches. *Cf. Nachtigal*, 507 U.S. at 5-6 (concluding that federal DUI offense was not serious where maximum imprisonment was six months and statute included additional penalties such as $5,000 fine); *Blanton*, 489 U.S. at 544-45 & n.9 (concluding that DUI was petty offense

SUPREME COURT
OF
NEVADA

(O) 1947A

8

under Nevada law where maximum imprisonment was six months and statute included additional penalties such as 90-day driver's license revocation, alcohol abuse education, and $1,000 fine or 48 hours of community service). That the Nevada Legislature did not view this as a "serious" offense is further reflected in its decision to afford the trial judge discretion to allow the defendant to serve the term of imprisonment intermittently. *See* NRS 200.485(1)(a).

We conclude that first-offense domestic battery is a "petty" offense to which the right to a jury trial does not attach. The petition therefore is denied.

_____, C.J.
Gibbons

_____, J.   _____, J.
Douglas                          Saitta